**Commonwealth ex rel. Sennett v. Minehart**

*Edward Friedman* and *Thomas H. Lane*, for plaintiff.

*Thomas Z. Minehart*, for defendant.

KREIDER, P. J., October 16, 1967.—This is an action in mandamus brought by the Hon. William C. Sennett, Attorney General of Pennsylvania, in the name of the Commonwealth, as plaintiff, praying that this court direct defendant, the Hon. Thomas Z. Minehart, State Treasurer, to honor a requisition by Max Rosenn, Secretary of Public Welfare, for a three-month supply of 1,000,000 serially numbered blank checks upon which to prepare disbursements for public assistance grants and capable of being processed by electronic data (computer) equipment in use at the offices of the Department of Public Welfare in Harrisburg.

## THE ISSUE

The issue in this case is whether the State Treasurer is required to follow an opinion of the Attorney General issued for the purpose of resolving a legal dispute between the Pennsylvania Department of Public Welfare and the Treasury Department which arose out of the interpretation of a State statute. The constitutionality of the statute has not been questioned.

## HISTORY OF THE CASE

Plaintiff's complaint, filed May 26, 1967, alleged that defendant capriciously, arbitrarily, unreasonably and unlawfully refused to perform his statutory duty by not supplying checks requisitioned by the Secretary of Public Welfare and by not following the opinion of the Attorney General, which advised defendant to comply.

On June 5, 1967, plaintiff filed a motion for summary judgment under Rule 1098 of the Pennsylvania Rules of Civil Procedure and, during the pendency of the motion, defendant on June 13, 1967, filed his answer to the complaint. This court on June 28, 1967, issued its order setting July 13, 1967, as the date for hearing and argument on plaintiff's motion for summary judgment. However, on July 11, 1967, defendant

filed a motion for judgment on the pleadings and to dismiss plaintiff's complaint. Thereafter, on July 13, 1967, the parties filed a stipulation of facts and requested the court to determine the controversy upon the complaint, answer and stipulation. Whereupon, argument was had before the court en banc upon their respective motions for judgment.

## STATEMENT OF FACTS

During the month of October 1965, the Commonwealth of Pennsylvania acquired electronic data processing (computer) equipment for use by the Department of Public Welfare, in order to modernize its method of keeping records of public assistance recipients, computing their grants and preparing their checks. Under section 4(e) of the Public Assistance Law of June 24, 1937, P. L. 2051, as amended, 62 PS §2504(e), the Department of Welfare is empowered to receive and supervise the disbursement of funds provided from any source for use in the Commonwealth for public assistance.

Under section 1503(b) of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1503(b), certain powers, duties and/or responsibilities are placed upon the offices of the Secretary of Welfare, State Treasurer, Auditor General and the Governor in the handling of payments of public assistance grants.

The State Treasurer has, by virtue of this section of the act, three primary duties relative to these grants: (1) To prescribe the form of and furnish checks for the payment thereof; (2) to sign the checks and (3) to mail them to the designated recipients.

The Secretary of Public Welfare is required to requisition blank checks serially numbered from the Treasury Department and, upon receipt thereof, to prepare the same for disbursement, entering thereon the names and addresses of the payees and the amounts

due each. He then prepares a requisition on the Auditor General in the total amount of such checks, and the Auditor General then issues his warrant on the Treasury Department in the same total amount.

The entire procedure encompassed by this program is to be carried out in Harrisburg and such other places as the Governor may direct.

On June 20, 1966, the Secretary of Public Welfare requisitioned from the State Treasurer a supply of blank checks capable of being filled in by the computerized equipment in use in the Secretary of Welfare's department. When there was no response to this requisition, the secretary on September 9, 1966, resubmitted his request. Subsequently, on September 20, 1966, the State Treasurer advised the Secretary of Welfare that he would not comply with the aforesaid requests. Thereafter, on February 15, 1967, the Hon. Raymond P. Shafer, Governor of the Commonwealth of Pennsylvania, issued an executive order to all administrative departments, independent administrative boards and commissions and other State agencies under his jurisdiction. *The executive order directed the Department of Public Welfare to put the computerized program into effect,* which included, among other things, the centralized preparation and disbursement of public assistance grants. This work was directed to be accomplished in Harrisburg, thereby eliminating any part of these functions being handled in Pittsburgh, Philadelphia and Scranton. The Governor's order set forth the reasons for his action, viz., to reduce the expenditure of funds presently required to administer the program and to increase its overall efficiency.

On May 2, 1967, the Attorney General, in order to resolve the conflicting legal positions of the State Treasurer and the Secretary of Public Welfare, issued his official opinion directed to defendant, advising him

that, under the law, it was the duty of the Treasury Department to supply checks in such form as the Department of Public Welfare may require for use in its electronic data processing program.

Following this opinion, the Secretary of Public Welfare again, on May 12, 1967, repeated his request for the checks heretofore mentioned. The State Treasurer, however, refused and continues to refuse to comply with the requests of the Secretary of Public Welfare and to follow the opinion issued by the Attorney General.

## DISCUSSION

In resolving the legal issue in this case, two questions must be answered: (1) Did the Attorney General have the power to issue the opinion, and (2) if he had this power, is the State Treasurer required to follow it?

Before discussing these questions, consideration must be given to the following

### Statutory Provisions Involved

Section 512 of The Administrative Code[1] of April 9, 1929, P. L. 177, art. V, 71 PS §192:

"Whenever any department, board, commission, or officer of the State Government, shall require legal advice concerning its conduct or operation, *or when any legal difficulty or dispute arises*, or litigation is commenced or to be commenced in which any department, board, commission, or officer, is concerned, . . . *it shall be the duty of such department*, board, commission, or officer, *to refer the same to the Department of Justice.*[2]

"It shall be the duty of any department, board, commission, or officer, *having requested and received legal*

---

[1] The provisions of section 512 of The Administrative Code of 1929, as amended, 71 PS §192, were formerly contained in section 509 of the 1923 Administrative Code.

[2] Emphasis throughout ours unless otherwise noted.

*advice from the Department of Justice* regarding the official duty of such department, board, commission, or officer, *to follow the same,* and, when any officer shall follow the advice given him by the Department of Justice, he shall not be in any way liable for so doing, upon his official bond or otherwise".

Section 902 of The Administrative Code of April 9, 1929, P. L. 177, art. IX, 71 PS §292:

"The Department of Justice shall have the power, and its duty shall be:

"(a) To furnish legal advice to the Governor, and to all administrative departments, boards, commissions, and officers of the State Government, concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor, or such administrative departments, boards, commissions, or officers;

"(b) To supervise, direct and control all of the legal business of every administrative department, board, and commission of the State Government".

Section 1503 (b) of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1503 (b) :

"(b) All payments out of the several funds in the State Treasury appropriated for public assistance shall be made *by check of a form prescribed and furnished by the Treasury Department, but filled in as to name of payee and amount by the Department of Public Assistance.* As soon after the effective date of this act as practicable but not later than sixty (60) days after such date, the Department of Public Assistance shall requisition the Treasury Department for supplies of *serially numbered blank checks upon which to prepare disbursements for public assistance grants,* and shall give its receipt to the Treasury Department for such blank checks, provided the Department of Public Assistance shall thereupon enter the name and address of the payee and the amount of payment and

such other information as shall be necessary, after which it shall prepare a requisition of the Auditor General in the total amount of such checks, and the Auditor General shall issue his warrant on the Treasury Department in the same total amount. Upon receipt of this warrant, the Treasury Department shall sign and mail the checks to the payees designated thereon. This procedure shall be followed in Harrisburg and at such points outside the City of Harrisburg as the Governor shall determine".

*Did the Attorney General Have the Power to Issue an Opinion for the Purpose of Resolving a Legal Dispute Between the Pennsylvania Department of Public Welfare and the Treasury Department Which Arose Out of the Interpretation of a State Statute?*

In considering this question, it must be borne in mind that the State Treasurer, though a constitutional officer, is also a member of the Executive Department of the Commonwealth. Article IV, sec. 1, of the Constitution of the Commonwealth of Pennsylvania provides:

"The Executive Department of this Commonwealth shall consist of a Governor, Lieutenant Governor, Secretary of the Commonwealth, Attorney General, Auditor General, State Treasurer, Secretary of Internal Affairs and a Superintendent of Public Instruction".

In commenting upon the duties of the State Treasurer and Auditor General in Commonwealth ex rel. Bell v. Powell, 249 Pa. 144 (1915), the Supreme Court of Pennsylvania said, page 154:

"Counsel for appellants also contend that section ten infringes upon the constitutional functions of the auditor general and state treasurer. The answer to this is, that *while these officers are named in the Constitution, yet their duties are not therein defined. That was left to the legislature.* That body did define

the duties of these officers, prior to the present Constitution, in the Act of March 30, 1811, 5 Sm. L. 228, and it is suggested that in adopting the present Constitution the continuance of those duties was contemplated. It must be admitted, however, that as the legislature originally prescribed those duties, it has power to alter them, . . ."

It therefore appears that the duties, responsibilities and powers of the State Treasurer flow from legislative enactments. Section 707 of The Administrative Code of April 9, 1929, P. L. 177, art. VII, 71 PS §247, provides:

"The State Treasurer shall exercise such powers and perform such duties as may now or hereafter be vested in and imposed upon him by the Constitution and laws of this Commonwealth".

Section 1101 of The Administrative Code of April 9, 1929, P. L. 177, art. XI, 71 PS §321, provides:

"Subject to any inconsistent provisions in this act contained, the Treasury Department shall exercise its powers and perform its duties as provided in the Fiscal Code and other applicable laws".

Since no constitutional question is involved in this case, the only matters for decision by us are as above stated. In the leading case of Commonwealth ex rel. Woodruff v. Lewis, Auditor General, 282 Pa. 306 (1926), the Supreme Court of Pennsylvania, speaking through Mr. Justice Simpson, said, page 309:

". . . Inasmuch as this litigation does not refer to any constitutional duty of the defendant, it follows that *the single point we are called upon to decide is:* Whether or not the auditor general is required, in the performance of his statutory duties, to refer to the department of justice disputes between him and other branches of the state government, and to follow the advice received from that department, unless those

matters involve the constitutionality of any statute, or part thereof . . ."

It is further stated, page 317:

". . . 'It is only when a "legal difficulty or dispute" arises that the legislature has directed state officers to lay the same before the department of justice for advice . . .' "

The complaint, answer and stipulation of facts clearly disclose that a "legal difficulty or dispute" has arisen between two important branches of the Executive Department of the Commonwealth. The State Treasurer in his answer avers that the advice of the Attorney General was not solicited by him; that section 1503 (b) of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1503(b), specifically provides that "All payments out of the several funds in the State Treasury appropriated for public assistance shall be made by *check of a form prescribed and furnished by the Treasury Department*, but filled in as to name of payee and amount by the Department of Public Assistance . . ." and that this section imposes upon the State Treasurer the duty to prescribe the form of check to be used for public assistance payments regardless of the views and regulations of the Department of Public Welfare and the executive order of the Governor[3] requiring that department to use the com-

---

[3] In Governor Shafer's executive order, dated February 15, 1967, it is stated, inter alia:

"The processing of public assistance grant payments has remained unchanged since 1939. This process is based upon manual and mechanical procedures lacking the advantage of modern methods of electronic data processing.

"Four years of careful study have produced a plan to utilize electronic computers in making public assistance disbursements. Computerized disbursements will save the Commonwealth $712,000 per year and will increase the efficiency of the program by providing data that is more complete, more accurate and more current. The necessary computing equipment will be available for use about June 1, 1967".

puter check processing system. Defendant's position appears to be that his power to prescribe the *form of check* is absolute and subject to no modification whatever, even though the Department of Public Welfare is the department *principally* concerned with the supervision and periodic drawing and distribution of a multitude of public assistance checks. The letter addressed to the State Treasurer by the Secretary of Public Welfare, dated June 20, 1966, indicates that 1,000,000 "card checks" constitute only a three-month supply.[4]

The State Treasurer further avers that the present method of printing checks is not outmoded and that they are printed by addressograph and not prepared by hand. He admits the Commonwealth borrowed electronic data processing equipment for the purpose, inter alia, of modernizing the method of keeping records of public assistance recipients, and computing their grants but denies that the computer was acquired for the purpose of printing public assistance checks.

---

[4] The letter states that:

"On June 25, 1964, the Secretary of Public Welfare advised the State Treasurer of the execution of a contract for a computer to be used in the disbursement of public assistance checks. . . .

"Subsequent meetings and correspondence have not resulted in the State Treasurer making available checks that can be used in the computerized procedure. Because of this failure, the Department of Public Welfare has not been able to use the computer for the purpose it was originally obtained.

"The Federal Government has now informed the Department that it will not participate in expenditures after June 30, 1966. This action will cost the Commonwealth at least $150,000 a year in Federal Funds.

"Although this Department has heretofore requested that you furnish it with checks so that it can carry on its computer program, we are now constrained to formally requisition, in accordance with Section 1503(b) of the Fiscal Code, 1,000,000 card checks in continuous form, a three-month supply, to be delivered by September 1, 1966. A sample of the check is attached. Your prompt and effective cooperation will be greatly appreciated".

Defendant also avers that the printing of the checks on the computer "is only a very incidental item insofar as the computer is concerned", and denies that his refusal to supply suitably sized blank checks will cost the Commonwealth $150,000 a year in Federal funds *or any sum*. He asserts "that the present procedure of processing public assistance checks compares favorably with any procedure in that the present procedure has been tried and tested for approximately thirty (30) years and has operated effectively and efficiently for said thirty (30) year period".

Although it is admitted that the use of a computer by the Department of Public Welfare for the purpose of recording data will give that department more accurate and current data information, defendant avers that this improvement has no relationship whatsoever to processing public assistance checks and that neither the Governor nor the Secretary of Public Welfare has the authority under The Fiscal Code, sec. 1503(b), supra, 72 PS §1503(b), or any other legislative act to prescribe the form of the check to be used in public assistance payments or the power to alter the language of the statute.

The court is not required in this proceeding to determine the validity of the respective contentions of the parties as to the merits of this case, because the constitutionality of a statute is not involved: Commonwealth ex rel. Woodruff v. Lewis, Auditor General, supra, 282 Pa. 306, 309, 310. Consequently, we need not consider defendant's contention that the Attorney General is attempting to erode the powers and duties of the State Treasurer nor, on the other hand, plaintiff's contention, as stated by his counsel at the argument, that the real reason for defendant's refusal to provide a form of public assistance check that can be used in a computer is his desire to retain numerous employes in office.

However, in the circumstances, we are constrained to hold that a "legal difficulty or dispute" exists which is within the scope of section 512 of The Administrative Code of April 9, 1929, supra, 71 PS §192, and that the Attorney General was under a duty to issue an opinion when requested so to do by the Department of Public Welfare and was justified in submitting his opinion to the State Treasurer, although unrequested by the latter.

*Was the State Treasurer Required to Follow the Opinion of the Attorney General?*

We think this question must be answered in the affirmative. There would seem to be little point in requiring the Attorney General to issue an opinion to a branch of the Executive Department of the State Government on a nonconstitutional question if the latter were free to disregard it. Defendant says in his brief that if he followed the opinion of the Attorney General, the powers of the State Treasurer would be materially curtailed and eroded. A similar contention was advanced in Commonwealth ex rel. Woodruff v. Lewis, Auditor General, 282 Pa. 306, supra. In that case, the Pennsylvania Supreme Court stated, page 316:

"Appellant further contends that the effect of the decision below is to 'strip the office of auditor general of all its essential powers and duties. He will promptly be reduced to the position of chief clerk of a bureau of revenue and disbursement of the department of justice.' The only merit of such a statement is its picturesqueness. If we were to assume that every possible legal question which might occur, would have to be submitted to the attorney general, there would still remain the wide field regarding questions of fact, constantly arising in the performance of the auditor general's duties, and in applying the law (whether

stated by the attorney general, or otherwise ascertained) to the facts as found . . ."

The State Treasurer also contends that he is not bound to follow the advice of the Attorney General because the latter rendered an "uninvited, advisory opinion" to him and cites in support of his position section 512 of The Administrative Code of April 9, 1929, supra, 71 PS §192, which provides, in part:

"It shall be the duty of any department, board, commission, or officer, *having requested* and received legal advice from the Department of Justice regarding the official duty of such department, board, commission or officer, to follow the same, . . ."

Unfortunately for defendant, the decision of this court in Commonwealth ex rel. Shockley v. Ross, 53 Dauph. 329 (1943), is squarely against him and is fully answered by President Judge Hargest who, after quoting section 512 insofar as relevant, stated, pages 333-34:

"This is the chart by which the Auditor General should have been guided in the present controversy.

"He excuses himself because of the third paragraph of the Section, by saying that he did not request the legal advice. Whether requested or not there was a controversy in which he was concerned, and an Informal Opinion, No. 1255, given by the Attorney General to the Department of Revenue, fully reviewed the whole matter . . .

"A copy of that Informal Opinion was sent to the Auditor General December 29, 1942, and he ignored it up to the time of the presentation of the petition for mandamus January 4, 1943.

"When the Attorney General has given his opinion, which involves the official conduct of a department of the State Government, that department cannot ignore its obligation under the statute to follow that opinion

merely because the opinion has not been requested by the department whose conduct is involved. . ."

Defendant strenuously asserts that since the statute in question specifically provides that the checks shall be of a form to be prescribed by the State Treasurer, he is entitled to have a judicial determination of his contentions by this court and not be bound in the first instance by the opinion of the Attorney General. While this view has received our full consideration, we are of the opinion that it ought not to prevail in the circumstances of this particular case. If it did, the head of every executive department of the Commonwealth who differed with the opinion of the Attorney General as to "administrative questions of a legal nature affecting the harmony which should exist between two or more of the executive departments of the State",[5] but not of constitutional stature, could litigate his contentions without restriction and thus nullify the intent of the legislature as expressed in section 512 of The Administrative Code of 1929, supra.

For the foregoing reasons, plaintiff's complaint in mandamus must be sustained.

### ORDER

And now, October 16, 1967, the motion for judgment on the pleadings filed by defendant, Thomas Z. Minehart, State Treasurer, is dismissed.

The motion for summary judgment filed by plaintiff, William C. Sennett, Attorney General, is granted and judgment is hereby entered in favor of the Attorney General and against defendant, Thomas Z. Minehart, State Treasurer.

The said Thomas Z. Minehart is directed to follow the advice of the Attorney General as set forth in his opinion and to honor the requisition of the Secretary

---

[5] See Commonwealth ex rel. v. Lewis, Auditor General, 282 Pa. 306, 317.

of Public Welfare by supplying him with the requested serially numbered blank checks capable of being processed by electronic (computer) equipment and upon which disbursements for public assistance grants may be prepared.