Burton Hetherington, Earl Strite, G. W. Robinson, Duane Hartsell, T. A. Doebler, and Jay Coble, Plaintiffs, *v.* James A. McHale, Individually and as Secretary of Agriculture of the Commonwealth of Pennsylvania, Bernard Hammer, Individually and as Acting Executive Secretary of the Pennsylvania Harness Racing Commission, Henry Nixon, Individually and as Director of Plant Industry, Thomas L. Rowland, Individually and as Director of Planning, Research and Governmental Services, and Raymond J. Kerstetter, Individually and as Deputy Secretary of Agriculture of the Commonwealth of Pennsylvania, Defendants.

Burton Hetherington, Earl Strite, G. W. Robinson, Duane Hartsell, T. A. Doebler, and Jay Coble, Plaintiffs, *v.* James A. McHale, Individually and as Secretary of Agriculture of the Commonwealth of Pennsylvania, and Robert P. Casey, as Auditor General of the Commonwealth of Pennsylvania, and Grace M. Sloan, as Treasurer of the Commonwealth of Pennsylvania, Defendants.

502

Argued June 4, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*K. L. Shirk, Jr.,* with him *Shirk, Reist & Buckwalter,* for plaintiffs.

*Frank P. Lawley, Jr.,* for defendant, Robert P. Casey.

*Lawrence Silver,* Deputy Attorney General, with him *Richard Orloski,* Deputy Attorney General, and *Israel Packel,* Attorney General, for remaining defendants.

*Edward C. Hussie,* with him *Stephen C. MacNett,* for amicus curiae.

OPINION BY PRESIDENT JUDGE BOWMAN, November 2, 1973:

Understandably perplexed as to the appropriate form of action to be employed in this bizarre case, six of seventeen persons appointed to a statutorily created committee charged with administering certain agricultural research programs financed by the Pennsylvania Fair Fund brought actions in equity (No. 560 C.D. 1973), in quo warranto (No. 559 C.D. 1973) and in mandamus (No. 555 C.D. 1973), seeking to enjoin meetings of or action by the committee unless plaintiffs participate therein; seeking judicial determination that plaintiffs are proper members of the committee and that they be seated thereon and to enjoin the approval of any research project and the allocation or expenditure

of any funds for such projects unless plaintiffs participate in the committee action. Named as party defendants are the Secretary of Agriculture and sundry other state officials.

In the equity action, a preliminary injunction was sought but application therefor was withdrawn after an agreement was reached by the parties that no committee meetings would be held pending outcome of this litigation. The Auditor General, by stipulation, was dropped as a party defendant in the equity action. Defendants then filed preliminary objections in all three actions which were consolidated for argument.

The preliminary objections, in the nature of a demurrer, assert that plaintiffs have failed to state a cause of action because the statute in question is unconstitutional insofar as it provides for the appointment of private citizens as representatives of private organizations to approve and oversee the expenditure of public funds.

The facts are not in dispute but these cases raise an issue without clear decisional precedent and of great importance to all citizens of the Commonwealth.

The Act of December 22, 1959, P. L. 1978, 15 P.S. §2601 et seq., commonly referred to as the Harness Racing Act, established a Pennsylvania Fair Fund into which certain excess proceeds flowing into the State Harness Racing Fund are to be paid and which proceeds are appropriated for designated purposes.

Subsection (e) of Section 16 of said statute, 15 P.S. §2616(e), prior to its amendment by the Act of September 28, 1972, P. L.      , Act No. 212, provided that a portion of the Pennsylvania Fair Fund should be used for agricultural research projects ". . . as determined by the Secretary of Agriculture, from the recommendations submitted by a committee appointed by him, such committee to include in its membership the dean of the college of agriculture at the Pennsylvania State Uni-

versity and the dean of the school of veterinary medicine of the University of Pennsylvania."

The subsequent legislative history on this subject and the administration of its revised provisions afford the background for and put in focus the first issue confronting us.

On June 5, 1972, the General Assembly finally enacted and sent to the Governor H. B. No. 1343, Pr. No. 2824, Session of 1971, which bill contained almost identical provisions to those now found in Act No. 212 of 1972. On June 15, 1972, by Veto No. 5, the Governor did not approve that bill and so advised the General Assembly. In his veto message, the Governor expressed his reason for doing so but did not assert that the legislation was unconstitutional.

On September 20, 1972, the General Assembly overrode the Governor's veto and its action was so certified by the Speaker of the House and President of the Senate. Thus, it became Act No. 212 of 1972. As amended, subsection (e) of Section 16 of the Act of December 22, 1959, P. L. 1978, provides in pertinent part that the responsibility for administering agricultural research projects within the limits of the funds appropriated for such purposes shall be as determined by: "a committee to include in its membership, the Secretary of Agriculture, the chairman and a minority member of the Agriculture Committee of the Senate, the chairman and a minority member of the Agriculture Committee of the House of Representatives, six persons designated by the Pennsylvania State Council of Farm Organizations, the chairman of the State Harness Racing Commission or his designate, one person designated by the Pennsylvania Canners and Fruit Processors Association, one person designated by the Pennsylvania Association of County Fairs and three persons designated by the Secretary of Agriculture from his staff." 15 P.S. §2616(e) (Supp. 1973-1974).

After this legislation became law over the Governor's veto, it is averred by plaintiffs, which are to be taken as true for present purposes, that they are designees of the Pennsylvania State Council of Farm Organizations to the committee in question, that the Secretary of Agriculture, acting under the statute, called a meeting on March 23, 1973, to be convened on April 5, 1973, in which call an agenda was included as was a list of the membership of the committee and progress reports on research projects to be considered for renewal. On appearing for the purpose of attending the meeting called by the Secretary of Agriculture, he then advised the plaintiffs that they were not authorized to serve on the committee, assigning as the reason therefor that the Attorney General by Official Opinion No. 30 dated April 4, 1973—the day before the scheduled meeting date—prohibited them from doing so.

Several of the constitutional issues raised by defendants' preliminary objections here as to the provisions of Act No. 212 of 1972 are treated in the Attorney General's Official Opinion in which he concludes that the legislation is unconstitutional in that "(1) it is a usurpation of the power of appointment which is vested in the executive, and (2) it is a special law in contravention of the Pennsylvania Constitution, Article III, §32."

I.

Initially, we consider and resolve the question of whether or not the Attorney General has the power and authority to unilaterally implement his opinion as to the unconstitutionality of a statute, a subject of considerable academic debate but one which until now has not been judicially determined.

It is in issue here because plaintiffs assert that the various reliefs they seek in the three causes of action

pleaded must be granted as a matter of law absent a *judicial determination* of the constitutionality of the statute in question. They argue that to allow the Attorney General to frustrate a presumptively constitutional statute by his unilateral action and, when challenged, then seek judicial determination of constitutionality by way of preliminary objections to the cause of action asserted violates basic concepts of separation of powers and affords him a weapon not recognized within his statutory or common law powers.

As we intend to reach and decide the constitutional issues raised in these proceedings, it may well be that we would not have to resolve this issue. Such a fundamental question, however, deserves to be raised from the murky uncertainty in which it has rested for too many years in Pennsylvania.

The Attorney General's office is established by the 1968 Constitution of Pennsylvania, Article IV, Section 1, and is included within the executive branch of State government. While the office of the Attorney General is created by the Constitution, his powers are derived from statutes as enacted by the Legislature. *Commonwealth ex rel. Sennett v. Minehart,* 44 Pa. D. & C. 2d 657, 663 (1967). And with respect to the *enforcement* of the law, the Attorney General retains "the powers and attributes of attorneys general under the common law." *Commonwealth v. Marmon,* 210 Pa. Superior Ct. 202, 206, 232 A. 2d 236, 239 (1967), citing *Margiotti Appeal,* 365 Pa. 330, 75 A. 2d 465 (1950); *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 188 A. 524 (1936).

Thus, unless the Attorney General has either statutory or common law power to unilaterally implement his opinion as to a statute's unconstitutionality, that power does not exist.

Those statutory duties of the Attorney General relevant to this case are set forth in the Administrative

Code of April 9, 1929, P. L. 177, art. V, §512, *as amended*, 71 P.S. §192 (Supp. 1973-1974). The statute provides in pertinent part:

"Whenever any department . . . shall require legal advice concerning its conduct . . . it shall be the duty of such department . . . to refer the same to the Department of Justice.

"It shall be the duty of any department . . . having requested and received legal advice from the Department of Justice . . . to follow the same . . . ."

The Supreme Court in *Commonwealth ex rel. [Woodruff] v. Lewis*, 282 Pa. 306, 315, 127 A. 828, 831 (1925), has stated in reference to the predecessor of Section 512, which section is identical in all important aspects to the current section: "The conclusion above stated being correct, section 509(b) expressly provides that 'it shall be the duty of the department, . . . having requested and received [such] legal advice . . . to follow the same,' unless, as the court below specifies . . . 'the constitutionality of a statute . . . is involved.' " and at 282 Pa. at 317, 127 A. at 831: ". . . the code relates to administrative matters *only* . . . ." (Emphasis supplied.)

The Supreme Court, therefore, has clearly indicated that there exists a distinction between "administrative" as opposed to constitutional issues. Furthermore, the Attorney General's statutory powers as regards issuance and effect of opinions are contained exclusively in the Administrative Code, as amended, and since that Code only pertains to "administrative" matters, the Attorney General is without statutory authority to implement his opinion as to unconstitutionality.

Nor do we believe that the Attorney General under his considerable common law powers, however broad they may be, ever enjoyed the power or authority to unilaterally abrogate a statute because in his opinion it was unconstitutional. The origin and scope of the

Attorney General's common law powers as then limited or enlarged by statute are fully set forth in *Commonwealth ex rel. Minerd v. Margiotti, supra,* and elaborated upon in *Margiotti Appeal, supra.* In neither of these cases, nor in those cases cited therein, is there the slightest suggestion or implication that the Attorney General enjoyed such awesome power for, if such a power ever existed in the English common law, it would be precisely that power that our forefathers intended to deny to this officer in adopting a provision first contained in our Constitution of 1790 and now Article I, Section 12, of our present Constitution which states: "No power of suspending laws shall be exercised unless by the Legislature or by its authority."

The Superior Court has defined "suspend" as follows: "Suspend means to cause to cease for a time; to postpone." *Bishop v. Bacon,* 130 Pa. Superior Ct. 240, 247, 196 A. 918, 921 (1938).

In the instant case, the Attorney General issued an opinion declaring the contested portions of the Act to be unconstitutional. While his opinion in and of itself might not be considered to be a suspension of the statute, there can be no doubt that his direction to Secretary McHale, not to seat the members of the committee from the private sector, was intended to and in fact had the effect of "suspending" that part of the Act. The legislative purpose as contained in the Act was, by reason of the action of the Attorney General, just as effectively frustrated and nullified as would be the case had the statute been judicially declared unconstitutional, and then only if its presumption of constitutionality were overcome by those who would attack it before the Judiciary.

The only branch of government that has the power to declare a law unconstitutional is the Judiciary. The Supreme Court in *Dauphin County Grand Jury Investigation Proceedings (No. 2),* 332 Pa. 342, 352-53, 2 A.

2d 804, 807 (1938), declared: "Accordingly, when the constitution of 1873 was adopted, the people acted in the light of generations of experience with the operation of the doctrine of the separation of powers, and with the resulting necessity for *judicial review* to resolve differences of opinion between the legislative, executive or judicial departments . . . . Not only were the people then familiar with the exercise from time to time by the court of the power to declare legislation unconstitutional, and also to restrain unauthorized executive acts, but from then until now, though the constitution has been frequently amended, no effective effort has been made to change or take away that power; it is so definitely settled that reference to precedents is unnecessary." (Emphasis supplied.)

The prophylactic purpose of the doctrine of separation of powers is only served when the Judiciary, and not the executive branch, reaches the issue of a statute's constitutionality.

Since the Attorney General is a member of the executive branch of government, it would be inconsistent with Article I, Section 12, and the doctrine of separation of powers to permit the suspension of a statute by way of a unilateral action by the Attorney General predicated upon his opinion of unconstitutionality. If the Attorney General had this power, he would seriously evade and encroach upon this area of judicial responsibility and possess an effective veto over legislation greater than that enjoyed by the Governor, which is clearly evident under the facts of this case.

If the Attorney General in his opinion believes that a statute is unconstitutional, he has the right and indeed the duty to either cause to be initiated an action in the courts of this Commonwealth and thus obtain judicial determination of the issue or he may prepare, for submission to the General Assembly, such revision of the statute as he may deem advisable. Section 905

of the Administrative Code of April 9, 1929, 71 P.S. §295.

There may exist an exception in those instances wherein the Supreme Court of the United States has declared unconstitutional a statute of another jurisdiction, which statute is the same as or similar to the Pennsylvania statute in all important aspects. In such instances, the Attorney General being of the opinion that a United States Supreme Court decision is controlling as to a Pennsylvania statute, he may implement that judicial decision. We do not mean to suggest that in all cases the Attorney General should enjoy this latitude, only in those cases when the applicability of the U. S. Supreme Court decision to a Pennsylvania statute is clear and unequivocal.

We conclude, therefore, that the Attorney General is without power or authority, even though he is of the opinion that a statute is unconstitutional, to implement his opinion in such a manner as to effectively abrogate or suspend such statute which is presumptively constitutional until declared otherwise by the Judiciary.

## II.

Given this view of the respective roles of the Attorney General and the Judiciary, the second aspect of this case, the challenge to the constitutionality of the Act itself, must now be determined. The Commonwealth has argued alternatively that the statute is unconstitutional as an improper delegation of authority, as a usurpation of the Governor's power of appointment, and as special legislation. Since we find none of these arguments compelling, we must sustain the constitutionality of the Act. In doing so, we are mindful of the presumption of constitutionality that is afforded to legislative enactments. As the Supreme Court said in *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A. 2d

835, 840 (1963), " 'An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution.' " (Emphasis in original.) This presumption has not here been overcome.

Article II, Section 1, of the 1968 Constitution of Pennsylvania declares, "The legislative power of this Commonwealth shall be vested in a General Assembly . . . ." This power has been defined countless times as the power to make laws. *Baldwin Township's Annexation,* 305 Pa. 490, 158 A. 272 (1931). It is also well established that the power may not be delegated. *Belovsky v. Redevelopment Authority of Philadelphia,* 357 Pa. 329, 54 A. 2d 277 (1947); *Locke's Appeal,* 72 Pa. 491 (1873). However, "[w]hile the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky, supra,* 357 Pa. at 342, 54 A. 2d at 284. Similarly, in *Locke's Appeal, supra,* 72 Pa. at 498, it was stated, "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

We believe that Act No. 212 of 1972 represents the appointment of a committee to implement the legislative judgment that certain funds be expended upon agricultural research projects. The committee has been established not to legislate, but to "carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky, supra.* As the case law indicates, this does not constitute an unlawful delegation of legislative power, and the fact that a minority of the committee's members are private citizens will not invalidate an otherwise lawful delegation. We

have been presented with no authority which prohibits
the appointment of private citizens onto a committee
created to implement a valid legislative policy of this
nature. Citizen input is the essence of a republican
form of government and has been substantially relied
upon by the Commonwealth in recent years as evi-
denced by the membership of a great number of state
boards, etc. Thus, we find no reason to disqualify
those committee members from the private sector. De-
spite the contention of the Commonwealth, there is no
actual cause to doubt the allegiance and judgment of
these individuals. *Olin Mathieson Chemical Corp. v.
White Cross Stores, Inc.*, 414 Pa. 95, 199 A. 2d 266
(1964), relied upon by the Commonwealth, which con-
cerns the *nondelegable* price regulatory power of the
Legislature, is inapposite.

The Commonwealth also submits that the statute
usurps the Governor's power of appointment. How-
ever, the Governor's power to appoint is not an un-
limited one. Article IV, Section 8, of the 1968 Consti-
tution of Pennsylvania provides, "(a) The Governor
shall appoint an Attorney General, a Superintendent of
Public Instruction and such other officers *as he shall
be authorized by law* to appoint." (Emphasis supplied.)
The Legislature has reposed in the Governor the power
to appoint various other officials in Section 207 of the
Administrative Code of 1929, 71 P.S. §67 (Supp. 1973-
1974). In all respects, the Governor's power of ap-
pointment is narrowly defined by the Constitution or
by the Legislature. For example, Section 701 of the
Administrative Code of 1929, 71 P.S. §241, provides,
*inter alia*:

"The Governor shall have the power and it shall be
his duty:

. . . .

"(i) To do all other acts, make all appointments,
fill all vacancies, exercise all the powers vested in him,

and perform all the duties imposed upon him, as provided and required by the Constitution and laws of this Commonwealth . . . ." And Article VI, Section 1, of the 1968 Constitution of Pennsylvania declares, "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law." Since there is no legislative enactment specifically conferring upon the Governor the power to appoint all members of a committee such as the one in controversy, there is no basis for holding Act No. 212 of 1972 unconstitutional as a usurpation of the Governor's power of appointment.

The Commonwealth's final attack on the constitutionality of the Act is based on Article III, Section 32, of the 1968 Constitution of Pennsylvania, which provides: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law . . . ." Whether a law is general or special has been the subject of extensive case law. It has been said that ". . . a statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition." *Wheeler v. Philadelphia,* 77 Pa. 338, 348 (1875). "But a classification in and of itself is not prohibited by Article III, §[32], as we have many times held [citations omitted] as long as the classification is reasonable and founded upon a genuine distinction [citations omitted]." *Bargain City U.S.A., Inc. v. Dilworth,* 407 Pa. 129, 133, 179 A. 2d 439, 442 (1962).

Thus, a legislative classification in and of itself is not violative of Article III, Section 32. The burden here, as in any constitutional challenge to a legislative enactment, is great: "Nothing but a clear violation of the Constitution will justify the judiciary in nullifying

a legislative enactment. Every presumption must be indulged in its favor, and one who claims an Act is unconstitutional has a very heavy burden of proof [citations omitted]. When a statute is challenged as prohibited special legislation, the reasonableness of the classification made is for the Legislature in the first instance; the duty of the court is limited to considering whether the Legislature had any reasonable ground for making it [citations omitted]." *Loomis v. Philadelphia School District Board of Education,* 376 Pa. 428, 431, 103 A. 2d 769, 770-71 (1954). The test of whether or not the classification violates Article III, Section 32, is not wisdom, but good faith and reasonableness. *Bargain City, supra,* 407 Pa. at 133, 179 A. 2d at 442; *Seabolt v. Commissioners,* 187 Pa. 318, 323, 41 A. 22, 23 (1898).

We hold that Act No. 212 of 1972 is not special legislation within the intendment of the constitutional proscription.[1] Article III, Section 32, was adopted "to put an end to the flood of privileged legislation for particular localities and for private purposes . . . ." *Haverford Township v. Siegle,* 346 Pa. 1, 6, 28 A. 2d 786, 788 (1942). Act No. 212 does not fall into this category of legislation. The thrust of the prohibition against special legislation is directed toward the ends desired to be served, and not necessarily toward the means employed. As was discussed previously, Act No. 212 represents a legislative judgment that the promotion of agriculture *throughout* the Commonwealth warrants

---

[1] In *Heuchert v. State Harness Racing Commission,* 403 Pa. 440, 170 A. 2d 332 (1961), the Court overruled similar constitutional objections to the validity of Act No. 212's predecessor. The prior Act was identical to Act No. 212 in all respects but the composition of the committee and the committee's role in determining the recipients of the funds. The committee, as originally created, was empowered solely to submit recommendations. It will be seen that these are distinctions without a difference insofar as constitutionality is concerned.

additional expenditures. Considering the status of agriculture[2] today, can it be said such a classification is not one of good faith or reasonable? The argument that certain private agricultural groups will unjustly benefit by virtue of their being represented on the committee established by the Act is grounded purely in conjecture. Numerically, the committee members from the private sector constitute a minority. *See Glen Alden Coal Company Case,* 350 Pa. 177, 38 A. 2d 37 (1944). Such fears cannot overcome the presumption of constitutionality and the acknowledged meritorious goal sought to be attained.

Having decided that the challenged portions of the statute are constitutional, we need not reach the difficult question of severability which would require resolution if we had reached a contrary result.

Accordingly, we enter the following

ORDER

Now, November 2, 1973, the preliminary objections of the Commonwealth in the nature of a demurrer are overruled. The defendants are directed to answer the plaintiffs' complaint within thirty (30) days of the date hereof.

---

[2] The regulatory nature of the statute in *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 272 A. 2d 478 (1971), *rev'g on the issue of severability,* 214 Pa. Superior Ct. 750, 251 A. 2d 723 (1969), *aff'g* 90 Dauph. 44 (1968), its applicability to the area of the healing arts, and its effect on one's profession distinguish that case from the one at bar.