## Neshaminy School District v. Board of Supervisors of Township of Middletown

*Miriam Reimel,* for plaintiff.
*Guy T. Matthews,* for defendant.

BIESTER, Jr., *J.,* April 27, 1984—This is an appeal from the decision of the Board of Supervisors of Middletown Township denying appellant Neshaminy School District's application for a curative amendment. The proposed curative amendment challenged the substantive validity of Ordinance 80-24 which rezoned all publicly owned property in the township from various classifications to O-R Open Recreation.* Appellant sought to have its twenty-

---

\* Section 602B of Middletown Township's Zoning Regulations sets forth the use regulations for O-R Districts as follows:

"(1) Uses Permitted by Right.

(a) Recreation uses include parks, picnic areas, day and overnight camping, hiking, equestrian trails, playfields, facilities for court games, swimming, boating, golf and similar open space recreation activities.

(b) Agricultural uses using existing facilities as a continuing interim use of land pending development of other permitted uses or as a demonstration farm when part of an overall recreation or educational area plan.

one parcels reclassified to their respective zoning classification in effect immediately prior to the enactment of the Ordinance. Having heard the appeal de novo, we decide this case on its merits, Boss v. Zoning Hearing Board, 66 Pa. Commw. 114, 443 A.2d 871 (1982); Porter Appeal, 28 Pa. Commw. 415, 418, 368 A.2d 828, 830 (1977), and we find the following to be the facts.

Through Ordinance 80-24, the Board of Supervisors of Middletown Township has attempted to rezone over 2,000 acres of land, encompassing 131 separate parcels of various sizes and dimensions which are scattered throughout the township. The net result of this ordinance is to carve out and reclassify to the most restrictive permissible use various parcels previously contained in the following districts: R-A(1)-(3) Residence Agricultural Districts, R-1 and R-2 Residence Districts, C Commercial District, P Professional District and M Manufacturing District. From the outset, only those properties owned by public entities were considered for reclassification to O-R and all of those considered were rezoned O-R. James J. Dillon, Township Manager, testified, and we so find, that the purpose of the reclassification was to ensure the lowest possible usage of the land so that the township could exercise maximum control over the property upon its sale.

---

(c) Nature and conservation educational uses such as arboretums, zoological gardens, wildlife preserves, fish hatcheries, forest management area and natural area.

(d) Accessory uses incidental to the operation and maintenance of the above permitted including parking facilities, shelters, rest rooms, administrative, maintenance and storage buildings and permanent housing for administrative or supervisory personnel."

Appellant owns 21 parcels in Middletown Township or approximately 533 acres, all of which were rezoned. Thus 26 percent of the property subject to the ordinance belongs to appellant. Appellant's properties vary in size; lots F&G together forming the smallest distinct rezoned area of approximately 1.2 acres, lots C-E forming the largest distinct rezoned area of approximately 216 acres. Appellant's properties contain a number of improvements which include several very large modern school buildings, maintenance and administrative buildings and a stadium. The following zoning classifications previously governed appellant's properties: R-A(2) & (3), R-1, R-2, M and P. The surrounding properties were similarly zoned R-A(2) & (3), R-1, R-2, PRD, A-O, M and C.

The following chart summarizes the zoning of appellant's property and that of the surrounding properties prior to the enactment of Ordinance 80-24, and the size of the subject property.

| Parcel | Use | Zoning | Adjacent Zoning Dists. | Acres |
|--------|-----|--------|-----------------------|-------|
| A | Nesh. Mid. School | R-A(2), R-A(3) | R-A(2), R-A(3) PRD | 40 |
| B | Vacant | R-2 | R-2 | 16.552 |
| C | | R-2 M | R-2, M | 133.4 |
| D | Nsh. High Schl. | R-2 | | 78.6 |
| E | | R-2 | | 4.3406 |
| F | Maintenance | R-2 | R-2 | 295 Sq. ft. |
| G | | R-2 | | 1.2 |
| H | | R-2 | R-1 | .39 |
| I | Oliver Heckman El. | R-1 | | 6.7 |
| J | & Adm. Bldg., | R-1 | | 4. |
| K | | R-1 | | 4.171 |
| L | Nesh. Maple Pt. High School | R-A(2) | R-A(2), R-A(3) | 87.557 |
| M | Herbert Hoover | R-1 | R-1, A-O | 46.951 |
| N | Elem. School | R-1 | | 13.049 |

| Parcel | Use | Zoning | Adjacent Zoning Dists. | Acres |
|--------|-----|--------|------------------------|-------|
| O | Pearl Buck El. Sch. | R-1 | R-2, C | 14.6818 |
| P | Samuel Everitt El. | R-1 | R-1 | .344 |
| Q | | | | 15.00 |
| R | Sandburg Mid. Sch. | R-1 | P, R-1, R-2 | 34.74 |
| S | Albert Schweitzer Elem. | P | | .80 |
| T | D. D. Eisenhower Sc. | P | P, R-2 | 13.92 |
| U | Walter Miller El. | R-2 | R-2 | 16.5 |

Most of appellant's lands contain recreational facilities or equipment and are open for public use although school-related activities take priority. The following properties are privately owned and have similarly preserved open space or are used for recreational activities: private and parochial schools such as Queen of The Universe, Woods School, George School and Friends School, recreational facilities such as Core Creek Park, Sun N Fun day camp, private tennis courts and racquet ball clubs, and other open space properties such as orchards, farms, nursing homes and hospitals. Although all of these properties have open spaces, some are used for recreational purposes and some are open to the general public, none of these is subject to the rezoning ordinance.

Appellant challenges Ordinance 80-24 as an arbitrary, unreasonable and discriminatory exercise of police power. In particular, appellant argues that the ordinance constitutes special legislation, illegal spot zoning, and so interferes with the legal use of its property as to amount to a taking without just compensation. In defense of its action, the board of supervisors argues that the ordinance represents a good faith and reasonable legislative enactment based on legitimate planning factors and that there-

fore, the board did not exceed the proper scope of its general police powers in enacting the ordinance.

When the constitutionality of a zoning ordinance is challenged, the reviewing court must presume that the zoning ordinance is valid and thus the burden of proving otherwise is on the challenging party. Schubach v. Silver, 461 Pa. 366, 380, 336 A.2d, 328, 335 (1975); Cleaver v. Board of Adjustment, 414 Pa. 367, 373, 200 A.2d 408, 412 (1964); In Re Izes, 75 Pa. Commw. 528, 462 A.2d 920, 922 (1983); McIlhinney v. Zoning Hearing Board of Bensalem, 72 Pa. Commw. 129, 131, 455 A.2d 1284, 1286 (1983). That burden consists of clearly establishing that the zoning ordinance is arbitrary and unreasonable with no relation to the public health, safety, morals and general welfare and if its validity is debatable, the legislative judgment controls. Schubach, 461 Pa. at 381, 336 A.2d at 335; Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, 71-72, 141 A.2d 851, 856 (1958); In Re Izes, supra; McIlhinney, supra.

Appellant first argues that Ordinance 80-24 constitutes impermissible special legislation. "The essence of the charge of 'special legislation' is the 'arbitrary and unreasonable intermeddling with the private ownership of property' by a legislative enactment. Hallowell, et ux. v. Lower Southampton Township, 28 Bucks Co. L. Rep. 237, 241 (1976) quoting Medinger Appeal, 377 Pa. 217 (1954). Rezoning which is aimed at preventing a theretofor legal use of land by one common interest is invalid. Commercial Properties, Inc. v. Peternel, 418 Pa. 304, 312 211 A.2d 514, 519 (1965); Linda Development Corp. v. Plymouth Township, 3 Pa. Commw.

334, 339, 281 A.2d 784, 787 (1971); Hallowell, supra. The party challenging the statute has burden of showing that the statutory classification was established unreasonably and in bad faith. Hallowell, 28 Bucks Co. L. Rep. at 241; Hetherington et al. v. McHale, et al., 10 Pa. Commw. 501, 515, 516, 311 A.2d 162, 169 (1973).

We hold that appellant has met its burden of proving that Ordinance 80-24 constitutes impermissible special legislation. This ordinance constitutes an attempt on the part of the board of supervisors to control the property of particular entities if and when those entities attempt to sell their property. The crucial defect in this rezoning scheme is that these particular properties were chosen for rezoning because they were owned by particular parties. For rezoning to be valid, it must operate in the reverse — i.e., particular owners should only be affected because of the physical location and attributes of the property.

The board of supervisors attempts to distinguish this case from Linda Development Corp., supra, Commercial Properties, supra, and Hallowell, supra, by pointing out that in each of those cases, the municipality was trying to "retroactively legislate" to prevent the owners from making a use of their property which was a legal use at the time it was proposed. Here, the argument continues, there was no attempt to defeat a proposed legal use and thus there is no special legislation. We reject this argument for two reasons. First, it is true that the board of supervisors did not come in after the fact and attempt to prevent a proposed legal use. It has instead attempted to gain control of the property before any such problems arise and thus be in a position to pick and choose as uses are proposed. In other words, rather than having to "retroactively

legislate" in order to prevent a particular owner from making an otherwise legal use of his property, the board has, by rezoning the property to the lowest possible usage, gained control of the property at the outset. The board cannot use its foresight to avoid a charge of special legislation.

Second, as stated above, special legislation is essentially the arbitrary and unreasonable intermeddling with private ownership of property. One attribute of ownership is the right to dispose of the property as the owner sees fit and to whom the owner sees fit within the bounds of the law. The board's attempt to interfere with that right, apparently because it feels a proper successor might not be chosen, constitutes an arbitrary and unreasonable intermeddling with the private ownership of property. The board may not rezone for the purpose of having a hand in a decision which would otherwise be in the hands of the owner.

To summarize, we believe that the basic infirmity of a zoning ordinance found to consititute invalid special legislation is the attempt to control the exercise of a property right by a particular property owner, the exercise of which the municipality had theretofor announced as legal and in compliance with its comprehensive plan. Whether the municipality tries to so interfere before or after the owner announces his plans is immaterial.

In addition to challenging the ordinance on the grounds of special legislation, appellant argues that the ordinance represents invalid spot zoning. Spot zoning is a form of discriminatory zoning and has been defined as "[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment." Porter Ap-

peal, 28 Pa. Commw. 415, 418-19, 368 A.2d 828, 830 (1977) quoting Mulac Appeal, 418 Pa. 207, 210, 210 A.2d 275, 277 (1965). However, illegal spot zoning involves more than mere dissimilar treatment of similar adjacent properties. What is required for invalidation, is a determination that such dissimilar treatment is not grounded upon any rational and legitimate justification. Thus the test for determining whether or not a municipality has engaged in invalid spot zoning involves a two-fold inquiry: (1) Is the rezoned tract being treated differently from similar surrounding land and, if so, (2) Is such differential treatment justifiable? Schubach, 461 Pa. at 382, 336 A.2d at 336; McIlhinney, 72 Pa. Commw. at 131, 455 A.2d at 1286; Sheeherman v. Wilkes-Barre City Zoning Hearing Board, 42 Pa. Commw. 175, 180, 400 A.2d 1334, 1336 (1979).

The board of supervisors argues that spot zoning analysis is inappropriate for two reasons. First, the Board contends that it is inappropriate for two reasons. First, the board contends that it is inappropriate because the ordinance did not single out one specific parcel for special treatment but rather reclassified a large number of parcels. Second, the board argues that spot zoning analysis is inappropriate because the ordinance affects parcels of substantial size and thus does not create the "small islands" necessary for a finding of spot zoning.

While it is true that spot zoning cases have typically involved the singling out of one parcel or small area, that the board here has acted to rezone a number of "islands" at one time does not prevent our finding the ordinance to be illegal spot zoning. As to the board's second contention, our review of spot zoning cases reveals that the basic flaw in the zoning ordinance found to constitute illegal spot zoning is the presence of discrimination or absence

of planning. Size is but one factor which indicates such discriminatory treatment or ad hoc zoning; the risks of special treatment and absence of planning being greatly reduced if the subject property is large. Ryan, Pennsylvania Zoning Law and Practice, §3.4.1, p. 70 (1981). Size of the property is not determinative of spot zoning. See Porter, Appeal, supra.

Having disposed of these preliminary arguments, we now turn to address the first issue, namely, is appellant's property being treated differently from similar surrounding land. We hold that it is. Prior to the enactment of Ordinance 80-24 appellant's properties were respectively zoned under a number of different classifications. The land surrounding each of these parcels was generally similarly zoned. However, only appellant's land and the land of other public entities was rezoned O-R.

A review of the record reveals that such dissimilar treatment is not justified by any difference in topography, locaction or any other physical attribute of the land. In light of the fact that public ownership was the sole criterion used by the township in choosing the land to be rezoned, it is not surprising that the boundaries between these new districts and the previously existing districts would be totally unrelated to the physical characteristics of the properties themselves.

The board of supervisors argues that any discrimination between these publicly owned lands and privately owned land is justified by the fact that appellant has committed its land to conservation, open space, recreation and education by virtue of its practice of leaving its properties open for general public use. Even assuming arguendo that appellant has so dedicated its property and that such dedication could serve as a justification for dissimilar treat-

ment of similarly situated properties, it would not serve to justify the instant ordinance for the simple reason that it does not explain why the privately owned properties that have likewise been committed to public use, conservation, open space, recreation and/or education were never even considered for possible rezoning to O-R. As stated in our recitation of the facts of this case, such properties include various private and parochial schools, Core Creek Park, Sun N Fun day camp, tennis courts, racquet ball clubs, orchards, farms, nursing homes and hospitals.

Further, such discrimination is not justified as a natural extension of a previously existing use. See generally Schubach, supra; Upper Darby Township Appeal, 413 Pa. 583, 198 A.2d 538 (1964). None of appellant's properties ever bordered an O-R district and we have been unable to identify any geographical trend in such uses within the township. Nor is the discrimination justified because of a need in the particular community. See generally Schubach, supra. We agree with the board that the establishment of recreation and open space districts throughout the municipality is a legitimate planning objective. However, in the instant case the properties chosen for rezoning were not selected because of their strategic location. The record is devoid of any evidence that the Board ever attempted to correlate the location of the particular parcels with the need in the particular communities. Most critical to the validity of any zoning ordinance is its consistency with comprehensive planning.

"In drawing the somewhat nebulous line between legal city planning and illegal spot zoning, the guiding hand is whether the action taken is in accord with a comprehensive plan or whether its action is

inconsistent with a comprehensive plan." Trinity Evangelical Lutheran Church v. Harrisburg, 2 Pa. Commw. 222, 224, 278 A.2d 372, 374 (1971)

We fail to see how this type of ad hoc zoning fits into any logical planning scheme and we therefore hold that the rezoning accomplished by Ordinance 80-24 constitutes invalid spot zoning.

In conclusion, we wish to note that certainly the preservation of open space is a commendable and legitimate goal. Appellant concedes as much. We are, however, reminded of the following passage from Chief Justice Bell's opinion in Cleaver v. Board of Adjustment, supra:

"The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the 'tone' of the community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish." 414 Pa. at 374, n 200 A.2d at 413, n 4.

Appellant in the case at bar has the right to be free from arbitrary, unreasonable and discriminatory interference with the ownership of its property. Ordinance 80-24 infringes upon that right and in so doing has substantially interfered with the value of appellant's property to appellant's economic detriment. Indeed, appellant argues that Ordinance 80-24 so reduced the value of its property as to amount to de facto condemnation. We, however, feel that it is unnecessary to reach that issue in light of our disposition of the other challenges raised.

For the above stated reasons, we enter the following

ORDER

And now, this April 27, 1984, we hereby order, direct and decree that the appeal is sustained.