## Absentee Ballots Case (No. 2).

Argued May 20, 1968. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*G. Thomas Miller*, with him *Rod J. Pera*, and *Mc-Nees, Wallace & Nurick*, for appellant.

*Arlin M. Adams*, with him *William T. Hangley*, and *Schnader, Harrison, Segal & Lewis*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, September 4, 1968:

Henry B. Leader was a candidate in 1966 for State Senator in the 28th Senatorial District, which comprises the major part of York County. After the ballots had been cast on November 8, 1966, Mr. Leader, with his attorneys, appeared before the York County Board of Elections and moved that the board not proceed with the counting of absentee ballots because, he asserted, that the section of the Election Code which empowered the county board of elections to canvass absentee ballots (Act of August 13, 1963, P. L. 707, 25 P.S. §3146.1-3146.9) was unconstitutional insofar as it applied to civilians' absentee ballots, on the basis that it violated Article VIII, §19 of the Constitution of Pennsylvania.

The board refused the motion and proceeded to tabulate the absentee ballots. Mr. Leader then filed a petition in the Court of Common Pleas of York County, reasserting the unconstitutionality of the contro-

verted section of the Election Code above cited. The court decided against Leader and he filed a petition, under Rule 68½ of this Court, which was granted.

The question now before us was considered and resolved in the *Absentee Ballots Case (No. 1)*, 431 Pa. 165, 245 A. 2d 258, which came up from Lackawanna County, and the opinion filed in that case is incorporated by reference into this opinion. However, the appellant here has presented his case with such earnestness and his brief gives evidence of such long and studious preparation that we do not feel that the appeal should be summarily disposed of by merely citing our decision in the Lackawanna County case filed today.

The insuperable obstacle which confronts the appellant in this case is that the election machinery as presently set up makes impossible what he declares should have been done in the 1966 election. He urges that the district elections boards and not the county election board should have counted the absentee ballots, but how could they? A district election board sits on election day and, after the polls close, the members thereof immediately proceed to tabulate the results shown on the voting machines, or the written ballots. When this has been accomplished, the job of the district election board is done. Its operation is at an end. It may not convene again to consider absentee ballots or any other kind of ballot. It has no permanent office at which complaints may be registered.

Under present law, absentee ballots must be placed in the mail by the voters no later than at the end of the day on which the election is held. This means that since the ballots are mailed from a distant point, they might well not arrive at the place where the district election board sits until days after the board has completed its labors and has disbanded. The district elec-

tion board's function is strictly a one-day operation. The county board, on the other hand, is a permanent body functioning continuously throughout its tenure of office.

In the face, therefore, of the impossibility of the district boards canvassing the absentee ballots during their ephemeral existence, it would be unfair, unreasonable and unjust to disfranchise the absentee voters who simply did what they were required to do by the election authorities.

Perhaps the Legislature should amend the election code to provide that absentee ballots must be mailed at such a time to insure their arriving at the district election board the day before the date of the election, on penalty of invalidation of such ballots that arrive later. With machinery of this kind, the district election boards could efficiently, speedily and properly handle all absentee ballots on election day so that when the computation would have been completed, it would include the counting of the ballots of those who voted by mail, as well as those who voted in person.

But this was not the state of the law on November 8, 1966, and we cannot found a decision on law that did not exist at the time the controverted event occurred. Nor can we, in the discharge of our appellate duties, declare unconstitutional an Act of the Legislature that contains no inherent constitutional infirmities, and particularly is this true in the absence of the slightest suggestion of any fraud, mistake or impropriety in the casting or counting of the pivotal ballots.

In considering a constitutional question we are guided by the principle clearly enunciated in *Daly v. Hemphill*, 411 Pa. 263, that "An act of the General Assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitu-

tion." We fail to see in the present litigation a clear, palpable and plain violation of the Constitution.

The provision of the Constitution under discussion provides that "The Legislature may by general law provide a manner . . . for the return and canvass of their votes in the election district in which they respectively reside." In interpreting language of this character, the illustrious Chief Justice GIBSON of this Court said: "A constitution is not to receive a technical construction, like a common-law instrument or a statute. *It is to be interpreted so as to carry out the great principles of government, not to defeat them*; and to that end its commands as to the time or manner of performing an act are to be considered as merely directory whenever it is not said that the act shall be performed at the time, or in the manner prescribed, and no other." *Com. v. Clark,* 7 W. & S. 127. (Emphasis supplied.)

The great responsibilities of government in this case dictate that the questioned ballots be counted and totaled, firstly, because the legislature has not provided for a method to tally the ballots other than the method which has been followed now for three decades, and, secondly, it is not urged that in the computing of the ballots by the county board the appellant was denied votes due him, as the result of mischief, mistake or mishap.

But, beyond all this, one cardinal principle shines over the field of controversy like the beam of a lighthouse over hazardous waters, namely, that the will and intent of the voter, clearly expressed, must be the paramount consideration in determining the result of any election. In *Contested Election of E. R. Wheelock,* 82 Pa. 297, this Court said: "An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of

technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings."

Other pronouncements on this subject follow: "Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it." *Norwood Election Contest,* 382 Pa. 547, 552. "There could scarcely be a duty more apparent and impelling on an Election Board than that of ascertaining *for whom* votes were cast. In the computation of the vote, its functions are not limited to those of a humanized adding machine." *McCracken Appeal,* 370 Pa. 562. (Emphasis in original) "In the instant case, the voters, on the ballots under discussion, unmistakably indicated their preferences and voted on the question by a proper mark in the proper square. The additions were mere surplusage. *To say that the minor irregularities rendered the votes void, would disenfranchise these votes for very picayune reasons."* (Emphasis supplied)

In the case at bar, no one questions that the electors unmistakably indicated their preferences, no one questions that they followed election procedure as indicated to them, no one questions that the absentee ballots correctly reflected the intention of the absentee voters. The only question is *who* should have counted the ballots? It is not contended that the ballots were tallied by strangers to government. The ballots were scrutinized, studied and eventually passed upon by a constitutional body that has been counting absentee ballots under existing law for 30 years. In addition, the ballots were counted in the presence of the appellant's representatives.

Even if the appellant's contentions were accepted, this would not mean that the tally of the district election boards of absentee ballots would be final. They would eventually have to go to the county board of elections for the final operation of computation, as the returns of the district boards on personally cast votes go to the county board. No matter how one regards this situation, it is impossible to arrive at a conclusion other than the one that no person has been deprived of any properly cast vote because the whole operation of the computation took place at the county level instead of at the district level.

As in the Lackawanna County case, the appellant here also argues that the members of the county board of elections are not "election officers" as defined in the Constitution. We ruled on this contention in the Lackawanna County case, and dispose of it in the same manner here, adding, with approval, what was said in the lower court in this case: "The votes will all be credited to the proper candidates under the directions of the statute and the will of the voters thus given proper effect. We think that the argument that the county commissioners are disqualified to canvass the ballots is without merit. This is based on Article VIII, Section 15, which prohibits certain officials from sitting as members of a district election board. They are not so sitting, and nowhere in the constitution is there any requirements that absentee ballots be canvassed by a district election board and by no one else." (Emphasis supplied).

The order of the court below is affirmed.

Mr. Justice JONES, Mr. Justice O'BRIEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.