19471

The STATE, Respondent, v. Louis WATKINS, Appellant.

(191 S. E. (2d) 185)

188

*Messrs. Laughlin McDonald,* of Columbia, and *George S. Daly, Jr.,* of Charlotte, N. C. *for Defendant-Appellant,* ██

*Messrs. Daniel R. McLeod, Atty. Gen., John P. Wilson, Asst. Atty. Gen.,* of Columbia, *Marion H. Kinon, Sol.,* of Dillon, and *Paul A. Sansbury,* of Darlington, *for Respondent,*

Aug. 9, 1972.

LITTLEJOHN, Justice:

Louis Watkins appeals his conviction of the crime of exhibiting obscenity, Code of Laws of South Carolina (1962) § 16-414.2. The conviction arose out of the showing of the motion picture "Anomalies" on two occasions at a theater in Darlington. This film, shown as an exhibit on this appeal, graphically depicts a variety of bizarre and "anomalous" acts of perverted sex behavior by naked men and women.

Watkins has asserted four broad issues upon which he seeks a reversal or new trial. Three of these concern matters which transpired in the lower court, and we deal with them first. The fourth issue concerns the constitutionality of the obscenity statutes.

The case was tried before Judge J. A. Spruill, Jr., and a jury during the June, 1971, term of the Darlington County General Sessions Court. During the jury selection the court's examination revealed that one prospective juror was the wife of the county jailer. A second prospective juror was the wife of a deputy sheriff. A third member of the jury was asked whether, if she were selected, she would feel any compulsion to find against the defendant in order to protect her children from movies dealing with sex. She replied affirmatively. She also said she would follow the instructions of the court. All three of these potential jurors were challenged for

cause by defense counsel. Judge Spruill denied these challenges, for which Watkins alleges error.

Under Code Section 38-202 the court is required, ██ upon motion of either party, to examine prospective jurors in order to ensure their indifference in the cause to be tried. A determination of a juror's competency is within the trial judge's discretion and is not reviewable on appeal unless wholly unsupported by the evidence. *State v. Johnson,* 248 S. C. 153, 149 S. E. (2d) 348 (1966). The record before us indicates that Judge Spruill conducted further examination of these jurors before determining their fitness. The record also discloses that defense counsel was allowed ten peremptory challenges instead of five, as provided in Code Section 38-211.

Section 16-414.2 of our Code, under which Watkins was indicted, reads as follows:

"It shall be unlawful for any person knowingly to send or cause to be sent, or to bring or cause to be brought into South Carolina for sale or distribution, or to prepare, publish, print, exhibit, distribute, or to offer to distribute in the State, or to have in his possession with intent to distribute, or to exhibit or to offer to distribute, any obscene matter."

"Matter" is defined in Section 16-414.1(b) to include motion pictures. "Obscene" is defined in Section 16-414.1 (a):

" 'Obscene' means that *to the average person, applying contemporary standards,* the predominant appeal of the matter, taken as a whole, is to prurient interest among which is a shameful or morbid interest in nudity, sex, or excretion, and which goes *substantially beyond customary limits of candor* in description or representation of such matters. . . . " (Emphasis added).

In an apparent attempt to bolster its showing that the film "Anomalies" "goes substantially beyond customary limits of candor," the State called two long-time residents

of Darlington as witnesses. These witnesses, Robert Bristow and W. J. Hunter testified that they had viewed the film. They further testified, over objection, that the motion picture exceeded the acceptable limits of frankness and candor in the community.

Watkins argues that, upon objection, conclusory testimony should be excluded until proper foundation is laid. At the trial, he challenged the qualifications of Bristow and Hunter. On this appeal he alleges that the lower court erred in that "Bristow and Hunter were allowed to testify regarding contemporary community standards without any demonstration of foundation." Again we disagree. Both of these witnesses appear to have been actively affiliated with local churches and with groups such as the Kiwanis Club, Chamber of Commerce, school board, etc. They testified that they had had occasion during the past year to discuss, with numerous persons living and working in the community, the current treatment and representation of sexual matters in books, newspapers, magazines and motion pictures.

The admission of testimony which is conclusive or opinioned, and the foundation required for its receipt, rest largely in the discretion of the trial court. 32 C. J. S. Evidence § 449 (1964). We feel that a sufficient foundation for this testimony of Bristow and Hunter was laid.

More important, though, is the fact that whether the motion picture "Anomalies" exceeded the community standard of candor was a question of fact to be determined by the jury. Such "standard" is dynamic and, to a degree, subjective, since it is by definition a "contemporary" and a "community" standard. The jury was entitled to accord much weight, some weight, little weight, or no weight to the testimony of Bristow and Hunter. But in the final analysis it was for the jury to determine and apply the socalled "contemporary community standard." And their determination and application are, as they must be, subject to

the scrutiny of the court. This is especially important where, as here, an accused's constitutional rights are involved.

There was no abuse of discretion in the admission of the testimony of Bristow and Hunter referred to above.

On cross-examination of Bristow and Hunter, defense counsel attempted to elicit testimony as to the harmful effects, if any, of the film. The State's objections were sustained by the judge, who said:

"I don't think we are concerned with whether it does harm or not. We are only concerned with whether it is obscene." Watkins again alleges error. We again find none.

A Crime, be it felony or misdemeanor, is simply an act done in violation of a penal law. Many Crimes (*e. g.,* arson, murder, rape) are *per se* harmful in each instance. Many other crimes (*e. g.,* sale of liquor to a minor, prostitution, violation of child labor laws) do not cause discernible harm each time they are committed. Nonetheless such practices have been condemned. They are deemed inherently harmful to society. The crime of exhibiting obscenity fall into this category. To convict someone for committing this crime the State is not required to prove that harm resulted. Judge Spruill properly declined to allow defense counsel to pursue that line of examination.

Today's test for obscenity was set forth by Mr. Justice Brennan in *Roth v. United States* 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. (2d) 1498 (1957):

"[Whether] to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." [footnote omitted; 354 U. S. at 489, 77 S. Ct. 1311].

In that opinion Justice Brennan also approved a definition of obscenity from the Model Penal Code:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes

substantially beyond customary limits of candor in description or representation of such matters." [354 U. S. at 487, 77 S. Ct. at 1310, footnote 20].

Code Section 16-414.1 (a), quoted above, "was obviously intended to and did substantially restate" the Roth test. *State v. Burgin,* 255 S. C. 237, 178 S. E. (2d) 325 (1970), rev'd 404 U. S. 806, 92 S. Ct. 46, 30 L. Ed. (2d) 39 (1971.)

"Being ultimately concerned only with the question whether the First and Fourteenth Amendments protect material that is admittedly obscene, the Court [in *Roth*] had no occasion to explore the application of a particular obscenity standard." Mr. Justice Harlan in *Manual Enterprises, Inc. v. Day,* 370 U. S., 478 p. 489, 82 S. Ct. 1432p. 1438, 8 L. Ed. (2d) 639 (1960). In later cases, however, the Supreme Court did have such occasion.

In *Jacobellis v. State of Ohio,* 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. (2d) 793 (1964), Justice Brennan made it clear that obscenity does not include "material dealing with sex in a manner that advocates ideas . . . or that has literary or scientific or artistic value or any other form of social importance." [378 U. S. 191, 84 S. Ct. at 1680.] He also affirmed that the "contemporary community standards" aspect of the Roth test contemplates national rather than local standards.

At the close of the State's case Watkins moved for a directed verdict of acquittal. The motion was denied. Watkins then rested without presenting any evidence in defense and renewed this motion. It was again denied and the court's denial of that motion is cited as being error for three reasons : (1) That there was no competent evidence of the statutory requirement of "contemporary community standards"; (2) That there was no competent evidence that the film was utterly without redeeming social importance; (3) That there was no evidence that the film did not bear the Motion Picture Association of America's Code Seal of Approval.[1]

---

[1] S. C. Code Ann. § 16-414.9 (1962) provides:
"The provisions of §§ 16-414.1 to 16-414.8 shall not apply to motion pictures that carry the Motion Picture Association of America's Code Seal of approval."

There was positive evidence introduced: the film ██ itself—certainly competent—was exhibited to the jury, but Watkins argues that the State must show evidence of what the "contemporary community standards" are. This, he says, the State has failed to do.

We do not think it incumbent upon the State to do this. As we said earlier the jury must, in the final analysis, determine and apply these standards. The members of the jury are "the exclusive judges of what the common conscience of the community is." Trial court's charge in *Roth, supra,* 354 U. S. at 490, 77 S. Ct. at 1312. This does not mean that the jury may apply *its own standards.* Rather, the jury must ascertain the common conscience of the *nation* and use this as its yardstick in measuring the allowance limits of candor.

Judge Spruill charged the jury, in essence, that "community standards" means "national standards." Watkins argues that there was no competent evidence of these standards. Proof of standards all over the United States is an impossibility and is not required as part of the State's case.

We feel that the same reasoning is dispositive of the ██ second phase of the argument. Watkins argues that there was no competent evidence that the film was utterly without redeeming social value. Again we point out that the film itself was exhibited to the jury. Materials which are alleged to be obscene are "sufficient in themselves for the determination of the question [of obscenity]." *Ginzburg v. United States,* 383 U. S. 463, 465, 86 S. Ct. 942, 944, 16 L. Ed. (2d) 31, 35 (1966). The State was not obligated to offer further evidence.

Watkins contends that the film does in fact have ██ social importance. We quote from his brief:

"The movie clearly presents information regarding sex, and theorizes that circumstances, rather than innate characteristics, explain much so-called anomalous sex behaviour.

"Finally, especially given the dearth of competent and intelligent advice available on sexual matters in our society,

the film obviously has some educational value. That it may stir us to anger or other feelings is irrelevant, for the First Amendment encompasses freedom for the thought we hate. It is undeniable that Americans in general suffer from sexual repression, *vide* the frequent eruption of sexual violence in our nation. This film has a thesis that sex should be understood, not repressed, and thus advances a valuable idea, perhaps one that if accepted would lessen our unfortunate sexual violence. It has 'redeeming' social value, in that it advances an idea. *All* ideas are socially important, and this redeems them, gives them legal salvation against repression."

The determination of the existence or absence of redeeming social value was, like determination of the "contemporary community standard", a matter for the jury's determination. Judge Spruill charged the jury as follows:

" . . . And the third element is this: that the matter is utterly without redeeming social value. In other words, if the movie has any scientific value, if you find it has any educational value, if you find it has any artistic value, or if you find any other social value, the defendant would be entitled to a verdict of not guilty."

It is implicit in the jury's verdict that the film was found to be utterly without scientific, educational, artistic, or other social value. Having viewed the film, this Court is not inclined to disturb this finding.

Watkins' third, and final, attack on the lower court's failure to direct a verdict in his favor is also without merit. He points out that there was no evidence that the film did not bear the Motion Picture Association of America's Code Seal of Approval. As indicated above (footnote 1) motion pictures which carry that seal of approval are exempt from the sanctions of Code Sections 16-414.2 *et seq*. The film was in evidence and it was apparent to both the jury and this Court that it did not bear the seal. There was no error.

Watkins' fourth argument on this appeal concerns the constitutionality of Code Sections 16-414.1 through 16-

414.9. His contention is that these sections are unconstitutional and he sets forth five reasons in support thereof. We deal with them one by one.

Section 16-414.1 (a) defines the word "obscene". The definition, set forth earlier in this opinion, bears repeating:
" . . . to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest among which is a shameful or morbid interest in nudity, sex or excretion, and which goes substantially beyond customary limits of candor in description or representation of such matters . . ."

The definition, as can be seen, is basically a composition of two elements: (1) predominant appeal to prurient interest; and, (2) going substantially beyond customary limits of candor.

Mr. Justice Brennan elaborated on the Roth definition of obscenity in *Jacobellis v. State of Ohio, supra:*

"Recognizing that the [*Roth* test] . . . is not perfect, we think any substitute would raise equally difficult problems, and we therefore adhere to that standard. We would reiterate, however, our recognition in *Roth* that obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance'. . . ." [ 378 U. S. at 191, 84 S. Ct. at 1680].[2]

He again elaborated in A Book Named *"John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of the Commonwealth of Massachusetts,* 383 U. S. 413, 86 S. Ct. 975, 16 L. Ed. (2d) 1 (1966) [herein cited as "Memoirs"]:

"We defined obscenity in *Roth* in the following terms: . . . Under this definition . . . three elements must coalesce: it must be established that (a) the dominant theme of the

---

2 Justice Brennan is here referring to dictum in *Roth* where he said, "But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." [354 U. S. at 484, 77 S. Ct. at 1309.]

material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." [383 U. S. at 418, 86 S. Ct. at 977].

Watkins argues that, in view of the opinions of the United States Supreme Court, the Code definition of obscenity is inadequate and therefore unconstitutional.[3] He gives two reasons for this.

First of all Watkins argues that South Carolina's test is less exacting since it requires only that the material go *substantially beyond* customary limits of candor whereas the Supreme Court has stated that it must be, as Judge Spruill charged, *patently offensive* to community standards. We are not convinced. If anything, it seems to us that South Carolina's standard is *more* exacting since it requires that the material go *substantially beyond* customary limits.

Watkins argues secondly that the Code definition is insufficient in that it does not contain the third of Justice Brennan's elements: "utterly without redeeming social value." Again we are not convinced. Justice Brennan's words (e. g., "We therefore adhere to that standard", *Jacobellis, supra;* "We defined obscenity in *Roth* in the following terms", *Memoirs, supra*) convince us that *the test* for obscenity remains: "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

No clear majority of the members of the Supreme Court has ever agreed that "utterly without redeeming social value" is a required third element of today's accepted *definition*. In his dissenting opinion in *Memoirs* Mr. Justice Clark said:

[3] A three-judge federal court in North Carolina has agreed. See *Shinall v. Worell*, 319 F. Supp. 485 (E. D. N. C. 1970).

". . . I understand that [*Roth*]test to include only two constitutional requirements . . . Moreover, in no subsequent decision of this Court any 'utterly without redeeming social value' test been suggested, much less expounded . . ." [383 U. S. at 442, 86 S. Ct. at 989].

Inasmuch as the Code definition "substantially restates" the Roth test, *Burgin v. State, supra,* we find it adequate.

Judge Spruill charged the jury that the State had to prove three things, one of which was that the motion picture was "utterly without redeeming social value." This was quite proper. *But not because "utterly without redeeming social value" is an element of "obscenity."* We understand "utterly without redeeming social value" to be the ground for not affording obscenity the protection of the First Amendment.[4]

The United States Supreme Court, in *Stanley v. Georgia,* footnote 4 *supra,* held that private possession of obscene material is constitutionally protected. Watkins' next argument attacking the constitutionality of § 16-414.1 *et seq.* essentially asserts that Stanley should be extended to a fact situation such as is presented in the instant case.

The United States Supreme Court has not extended Stanley's holding to protect conduct such as Watkins'. Neither has our legislature narrowed the scope of our obscenity statutes so as to protect it. The State's power to regulate obscenity being broad. *Stanley, supra,* we cannot say that Sections 16-414-1, *et seq.,* are excessively so.

Section 16-414.2, quoted above, makes it unlawful to *knowingly* exhibit etc., obscene matter. The word "knowingly" is defined in Section 16-414.1 (d) :

---

4 Confusion abounds ! In *Roth* Justice Brennan said, "We hold that obscenity is not within the area of constitutionally protected speech or press" (354 U. S. 485, 77 S. Ct. 1309.) That court has subsequently made it clear that obscene matter is in fact, to a degree at least, constitutionally protected. *Stanley v. Georgia,* 394 U. S. 557, 89 S. Ct. 1243, 22 L. Ed. (2d) 542 (1969).

". . . having knowledge of the contents of the subject matter or failing after reasonable opportunity to exercise reasonable inspection which would have disclosed the character of such subject matter."

Watkins argues that this section imposes an impermissible burden on a defendant and thus unconstitutionally tends to prohibit protected expression. A defendant may be convicted without his having actual knowledge of a film's contents, he asserts. Further, Watkins says, a defendant is enticed by this statute to attempt to justify his conduct, this in violation of the Fifth Amendment right not to testify.

Watkins' burden is, we think, more imagined than real. A lengthy discussion of this contention is therefore not warranted. A conviction can result under this statute only where the defendant knows of, or fails to learn after reasonable opportunity to reasonably inspect, the character of the material. The requirement is not impermissibly burdensome.

Section 16-414.7 (d) of the Code provides that upon written notice by a person whose material has been seized a judicial hearing shall be held "to determine whether or not there exist reasonable grounds to believe such material is obscene." Watkins next attacks the constitutionality of this section of the Code. The facts in this case do not entitle defendant to raise this issue, and we do not consider it.

We come now to Watkins' final attack on the constitutionality of the obscenity statutes. Section 16-414.9 (footnote 1 *supra*), he contends, offends procedural due process in that it vests the power to exempt a certain class of films from prosecution in the uncontrolled hands of the Motion Picture Assocation of America ("M P A A"). He further argues, among other things, that "the state may not confer upon [the M P A A] complete and standardless power to decide who will be exempt from prosecution."

We agree with these contentions.

The General Assembly has exclusive legislative power in our state government, S. C. Const. Art. 3, § 1. Our constitution also provides that:

"In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said deparments shall assume or discharge the duties of any other." S. C. Const. Art. 1, § 8 (formerly Art. 1, § 14).

It is well settled that the power to legislate cannot be delegated to private persons or corporations, 16 Am. Jur. (2d) Constitutional Law § 249, 16 C. J. S. Constitutional Law § 137, nor to any other body. *DeLoach v. Scheper*, 188 S. C. 21, 198 S. E. 409 (1938).

In *S. C. State Hwy. Dpt. v. Harbin*, 226 S. C. 585, at page 594, 86 S. E. (2d) 466, at page 470 (1955), we said:

"The question of delegation of legislative power has confronted the courts with many perplexing problems, particularly during recent years when the complexities of government have been constantly on the increase. It is well settled that while the legislature may not delegate its power to make laws, enacting a law complete in itself, it may authorize an administrative agency or board 'to fill up the details' by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose [ citing authority ] . . . 'However, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the adminstrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration.' [ citing authority]".

Section 16-414.9 does not measure up to these guidelines. No ascertainable standards are set forth for the guidance of the M P A A. Exclusion from pros-

ecution cannot be made dependent upon the whim or will of such an association. We therefore hold that section 16-414.9 lacks the constitutionally-required certainty demanded by due process of law. We further hold that the section is an unconstitutional delegation of legislative power. This holding does not, however, strike down sections 16-414.1 through 16-414.8.

The sections of the statute are severable.

The conviction is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.

