19727

The STATE, Respondent, v. Louis WATKINS, Appellant.

(203 S. E. (2d) 429)

*Messrs. George S. Daly, Jr.,* of Charlotte, N. C., and *Laughlin McDonald,* of Atlanta, Ga., *for Appellant.*

*Messrs. Daniel R. McLeod, Atty. Gen., John P. Wilson, Atty. Gen..* of Columbia, *Marion H. Kinon, Sol.,* of Dillon, and *Paul A. Sansbury,* of Darlington, *for Respondent.*

November 26, 1973.

LITTLEJOHN, Justice:

This case has been before this Court heretofore, resulting in our opinion affirming a conviction in *State v. Watkins,* 259 S. C. 185, 191 S. E. (2d) 135 (1972). Thereafter, Watkins appealed to the Supreme Court of the United States. It was among more than 50 cases involving the Law of Obscenity. The United States Supreme Court disposed of the appeal by ordering "that the judgment of the Supreme Court of South Carolina in this cause be vacated, and that this cause be remanded to the Supreme Court of the State of South Carolina for further consideration in light of *Miller v. California,* 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. (2d) 419 (1973); *Paris Adult Theatre*

*I v. Slaton,* 413 U. S. 49, 93 S. Ct. 2628, 37 L. Ed. (2d) 446 (1973); *Kaplan v. California,* 413 U. S. 115, 93 S. Ct. 2680, 37 L. Ed. (2d) 492 (1973); *U. S. v. 12 200-ft. Reels of Super 8mm Film,* 413 U. S. 123, 93 S. Ct. 2665, 37 L. Ed. (2d) 500 (1973); *U. S. v. Orito,* 413 U. S. 139, 93 S. Ct. 2674, 37 L. Ed. (2d) 513 (1973); *Heller v. N. Y.,* 413 U. S. 483, 93 S. Ct. 2789, 37 L. Ed. (2d) 745 (1973); *Roaden v. Ky.,* 413 U. S. 496, 93 S. Ct. 2796, 37 L. Ed. (2d) 757 (1973); and *Alexander v. Virginia,* 413 U. S. 836, 93 S. Ct. 2803, 37 L. Ed. (2d) 993 (1973)." (Citations Added.)

We now proceeded to dispose of the case, keeping in mind *Miller, Paris Adult Theatre,* and other opinions cited by the United States Supreme Court. The Court has consistently held both before and in *Miller* and in *Paris Adult Theatre* that obscenity is not protected by the First Amendment to the Constitution of The United States.

In *Miller* there was involved a statute of the California Legislature which defined obscenity as follows:

" 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is prurient interest, *i. e.,* a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance."

In *Paris Adult Theatre* there was involved a statute of the Georgia Legislature which defined obscenity as follows:

"Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters. . . . "

In the case before us there is involved a statute of the South Carolina Legislature which defines obscenity as follows:

" 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to pruient interest among which is a shameful or morbid interest in nudity, sex or excretion, and which goes substantially beyond customary limits of candor in description or representation of such matters. . . ."

It is readily observed that the statutes of the three states undertaking to define obscenity are amazingly similar.[1] It is obvious that the legislature in all three states strove to enact a law compatible with the ruling in *Roth v. United States,* 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. (2d) 1498 (1957). The principal difference between the South Carolina statute on the one hand and the California and Georgia statutes on the other hand lies in the omission of utterly without redeeming social value (or importance) in our statute.

Such omission from the South Carolina statute is without real meaning, and we think that the three statutes have the same constitutional footing. No constitutionally valid argument can be made that one of the three should stand and another fall. In *Miller* the majority opinion of Chief Justice Burger said:

"We do not adopt as a constitutional standard the 'utterly without redeeming social value' test of *Memiors (sic) v. Massachusetts, supra,* 383 U. S. [413], at 419, 86 S. Ct. [975], at 977 [16 L. Ed. (2d) 1] (1966); that concept has never commanded the adherence of more than three Justices at one time."

---

[1] New York and Kentucky also have similar statutes.

Notwithstanding the fact that our statute did not require that material be "utterly without redeeming social value" warrant a conviction, the trial judge charged the jury that before a conviction could be had it must find "that the material is utterly without redeeming social value." Watkins was given the benefit of this charge and should not be heard to complain. The charge was more favorable to Watkins than a charge required by *Miller* to the effect that in order to warrant a conviction a jury must find that the work, taken as a whole, lacks serious material, artistic, political, or scientific value.

The absence of *Miller* specificity did not render the Georgia statute and the California statute unenforceable or unconstitutional. By a similar token, our statute is not unenforceable or unconstitutional. It is significant that the statutes of California and of Georgia were not invalidated, and the judgments were vacated but not reversed. In *Paris Adult Theatre* the Court said:

"In this case we hold that the States have a legitimate interest in regulating commerce in obscene material and in regulating exhibition of obscene material in places of public accommodation, including so-called 'adult' theatres from which minors are excluded. In light of these holdings, nothing precludes the State of Georgia from the regulation of the allegedly obscene materials exhibited in Paris Adult Theatre I or II, provided that the applicable Georgia law, as written or authoritatively interpreted by the Georgia courts, meets the First Amendment standards set forth in *Miller v. California, supra,* 413 U. S. [15] at pp. 23-25, 93 S. Ct. [2607] at pp. 2614-2616 [37 L. Ed. (2d) 419]."

We quote the First Amendment standards from *Miller* as follows:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as

a whole, appeals to the prurient iterest, *Kois v. Wisconsin, supra,* 408 U. S. [229], at 230, 92 S. Ct. [2245], at 2246 [33 L. Ed. (2d) 312], quoting *Roth v. United States, supra,* 354 U. S., at 489, 77 S. Ct. [1304], at 1311 (1957), (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the 'utterly without redeeming social value' test of *Memoirs (sic) v. Massachusetts, supra,* 383 U. S., at 419, 86 S. Ct. [975], at 977 (1966) ; . . . "

We are of the opinion that the proof required of the State under our statute is more strict than the proof required by the *Miller* standards. The State has met *Roth* requirements. Until our statute is amended by the legislature, the more strict requirements of the law of this State must be met before a conviction can be had. Even as the legislature strove to adapt its obscenity definition to the the guidelines of *Roth, supra,* it may now need to adapt a new definition to *Miller.* In the meantime, we cannot say that the legislature brought into being an unconstitutional statute by following the *Roth* guidelines.

To say that statutes which followed the *Roth* guidelines so closely are unconstitutional, is to say that no statute could be enacted compatible with *Roth.* To hold that the statute is too broad and vague is to hold that the opinions of the United States Supreme Court which gave birth to the statute are too broad and vague. Obviously, the test of *Roth* is different from the test of *Miller.* Watkins is charged with an offense after *Roth* and before *Miller.* The trial judge utilized the test which prevailed under the applicable statute as amplified by authoritative construction published at the time of the offense. Such statute and authoritative construction constituted notice of the proscribed conduct. The trial judge was not expected to antici-

pate the holding in *Miller* and conducted the trial under the applicable law.

We do not regard *Miller* as having overruled *Roth,* at least not so as to require retroactive application. Rather, we regard it as an attempt to clarify what shall henceforth constitute the standards applicable to obscenity. We can further say that we interpret the *Miller* test as less exacting upon the State than is the *Roth* test, such that material determined to be obscene under *Roth* is, *a fortiori,* obscene under *Miller.*

The law as charged by the trial judge to the jury which convicted Watkins required the State to meet the most rigorous obscenity proof ever enunciated by the United States Supreme Court. Watkins was tried under *Roth.* The equities have been balanced and hereafter applicable law under *Miller* will be less favorable to a defendant and more favorable to the State.

We regard the United States Supreme Court's disposition of Watkins' appeal not as requiring this Court to apply the *Miller* test to this defendant's case, but rather as allowing this Court opportunity to determine whether or not the present South Carolina obscenity statute squares with those henceforth applicable standards.

*Miller* puts to rest the contention that material must be "utterly without redeeming social value" and the argument that the community standard is a national one.

We construe § 16-414.1 of the Code of Laws of South Carolina (1962, as amended) to apply to hard core sexual conduct, such as patently offensive representations of ultimate sexual acts, normal or preverted, actual or simulated; and such as patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

The conviction and sentence of Watkins is
Reaffirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.