Hetherington *v.* McHale et al., Appellants.

480

Argued January 17, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Larry Silver,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for appellants.

*K. L. Shirk, Jr.,* with him *Shirk, Reist and Buckwalter,* for appellees.

*Edward C. Hussie* and *Stephen C. MacNett,* for amicus curiae.

OPINION BY MR. JUSTICE ROBERTS, November 22, 1974:

In these appeals from the Commonwealth Court, we are called upon to determine the constitutionality of a statute which grants to three private organizations absolute authority to designate a controlling number of the members of a Commonwealth committee responsible for the disbursement of substantial public funds. The Commonwealth Court determined that the statute is valid. Because we conclude that the power to appoint persons to conduct governmental functions cannot be delegated to private organizations, we hold the selection procedures of the challenged statute unconstitutional. We reverse.

The challenged statutory provision is an amendment to section 16(e) of the Pennsylvania Harness Racing Act.[1] It became law on September 20, 1972, when the

_____

[1] Act of December 22, 1959, P.L. 1978, § 16(e), as amended, 15 P.S. § 2616(e) (Supp. 1974).

"In the event there is in the Pennsylvania Fair Fund an excess over the amount required to make payments specified in subsection (d) above, such excess shall be distributed as follows: ten percent of such excess or seventy-five thousand dollars ($75,000), whichever amount is greater to be used by the Department of Agriculture for marketing and consumer service programs; and fifty percent of such excess or four hundred thousand dollars ($400,000), whichever amount is greater for agricultural research projects, as determined by a committee to include in its membership, the Secretary of Agriculture, the chairman and a minority member of the Agriculture Committee of the Senate, the chairman and a minority member of the Agriculture Committee of the House of Representatives, six persons designated by the Pennsylvania

General Assembly enacted the amendment over the Governor's veto.

Section 16 provides for the allocation of revenue collected pursuant to the Pennsylvania Harness Racing Act. After mandating certain disbursements, subsection (e) provides that half the remaining funds of $400,000, whichever is greater, shall be allocated for agricultural research projects selected by a committee of seventeen including six persons designated by the Pennsylvania Council of Farm Organizations, one person designated by the Pennsylvania Canners and Fruit Processors Association and one person designated by the Pennsylvania Association of County Fairs.

Following enactment of the amendment, the Secretary of Agriculture notified the Pennsylvania State Council of Farm Organizations of a scheduled meeting of the committee. The Council selected appellees as its designees. On April 4, 1973, one day prior to the scheduled session, the Pennsylvania Attorney General

State Council of Farm Organizations, the chairman of the State Harness Racing Commission or his designate, one person designated by the Pennsylvania Canners and Fruit Processors Association, one person designated by the Pennsylvania Association of County Fairs and three persons designated by the Secretary of Agriculture from his staff

"There are hereby created subcommittees, the members of which shall consist of the Secretary of Agriculture or his designate, the chairman of the Agriculture Committee of the Senate or his designate, the chairman of the Agriculture Committee of the House of Representatives or his designate, and a member designated by the group representing the producers involved in the research project which shall meet annually in the month of September to evaluate research projects and report their findings and recommendations to the Secretary of Agriculture and the members of the Committee.

"In the event the amount of money in the Pennsylvania Fair Fund is less than is required to make payments specified in subsection (d) above, the amount granted to each recipient shall be reduced proportionately."

issued Official Opinion No. 30 in which he advised the Secretary of Agriculture that the mandate of section 16(e) to include on the committee eight designees of private groups is unconstitutional. He further advised the Secretary that "you must refuse to recognize these persons as members of the Committee." In compliance with this opinion, the Secretary of Agriculture refused to seat these designees.

Appellees filed three actions in the Commonwealth Court: an action in equity to enjoin the committee from meeting or taking action in appellees' absence and separate actions in quo warranto and mandamus to obtain judicial enforcement of their appointments. Appellants filed preliminary objections in the nature of a demurrer in each of the actions.

The Commonwealth Court overruled appellants' objections.[2] It held (1) that the statute did not violate the Constitution (2) that the Attorney General lacked the authority to unilaterally implement his opinion as to the unconstitutionality of a statute.[3] These appeals ensued.[4]

In adjudicating the merits of these appeals, the standard of review is clear. " 'An Act of [the General] Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the constitution.' " *Daly v. Hemphill*, 411 Pa. 263, 271, 191

---

[2] *Hetherington v. McHale*, 10 Pa. Commonwealth Ct. 501, 311 A.2d 162 (1973).

[3] In view of our disposition of this case, we need not reach the issue of the Attorney General's authority.

[4] The Commonwealth Court certified that its order involved a controlling question of law as to which there is a substantial ground for a difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of this litigation. The Attorney General petitioned this Court for leave to appeal and on December 3, 1973, we granted the petition. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, § 501(b), 17 P.S. § 211.501(b) (Supp. 1974).

A.2d 835, 840 (1963) ; see also *Absentee Ballots Case*, 431 Pa. 178, 181-82, 245 A.2d 265, 267 (1968). The challenged statute does so.

A fundamental precept of the democratic form of government imbedded in our Constitution is that the people are to be governed only by their elected representatives. Section 16(e) violates this principle by surrendering to private organizations the power to select eight of seventeen members of a committee responsible for the disbursement of public funds. Neither the Legislature nor the Governor may reject the appointees of these private groups. And it is unclear that either could remove these designees, for the power to appoint governmental officials includes the power to remove them. Pa. Const. article VI, section 7.

In fact, the people of this Commonwealth, through their duly elected representatives, have no voice in the appointments of those selected by these three private groups. No opportunity is provided for the public interest to assert itself. Instead, private groups responsive only to the interests of their membership choose those charged with performing governmental functions.

This Court has previously held that governmental powers cannot be delegated to private individuals or organizations. For example, in *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A.2d 266 (1964), we invalidated the Pennsylvania Fair Trade Act's "non-signers" provision. In that case, Mr. Justice EAGEN, speaking for the Court stated: "Price regulatory power vests only in the elected legislative body. It may in limited ways be delegated to other responsible governmental agencies, such as public service or utility commissions . . . . However, it may not be delegated to private persons. The vesting of a discretionary regulatory power over

prices, rates or wages, in private persons violates the essential concept of a democratic society and is constitutionally invalid." Id. at 98-99, 199 A.2d at 267-68.

We are equally concerned with the preservation of the "essential concepts of a democratic society" when the power delegated is the authority to make appointments to a committee exercising governmental functions. The power to select those who make public decisions is too vital a part of our scheme of government to be delegated to private groups. *Olin Mathieson,* supra; cf. Pa. Const. article IV, section 8.

Appellees contend, however, that because they represent a large number of Pennsylvania farmers, they are more aware of the needs of agriculture than are the popularly selected branches of government. No doubt the organization that designated appellees does have an understanding of farm problems. Nevertheless, claims of expertise do not sap the vitality of the fundamental principle that we are to be governed by our elected representatives in accordance with the Constitution.

In a similar context the Supreme Judicial Court of Massachusetts reasoned that expertise does not justify delegation of the appointment power to politically unresponsive groups: "Their [private interest groups'] memberships undoubtedly contain many individuals as well qualified as any who may be found to serve on the commission. But each individual is accountable solely to his own respective organization and has no connection with any branch of government in which the sovereign power is lodged by our Constitution." *Opinion of the Justices,* 337 Mass. 777, 784, 150 N.E.2d 693, 698 (1958).

Appellees contend that the process by which they were appointed does not affect the validity of their appointments because the statute contains some stan-

dards by which they must abide. See *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A.2d 487 (1965); see also *Pennsylvania Human Relations Commission v. Uniontown Area School District*, 455 Pa. 52, 79 n.27, 313 A.2d 156, 170 n.27 (1973). This contention however misses the mark. Statutory standards provide no substitute for the processes of representative government[5] which requires that persons who make governmental decisions be either elected by the people or appointed by the representatives chosen by the people.

In the past, this Court has vigilantly guarded the right of the people to representative government. When the necessity arose, we struck down legislation designed to impermissibly delegate governmental policy making to private parties. See, e.g., *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 272 A.2d 478 (1971); *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A.2d 266 (1964). Now we must again hold invalid a statutory attempt to dilute the people's right to be governed only by their constitutionally chosen representatives.

Courts of other states have also recognized the danger to constitutional government posed by delegation of public decisionmaking to private interest groups. The Supreme Judicial Court of Massachusetts held unconstitutional a virtually identical provision. That court said: "We think that it would not be proper to authorize the selection of persons to expend public funds by organizations or groups not themselves public bodies or made up of public officers." *Opinion of the Justices*, 337 Mass. 777, 784, 150 N.E.2d 693, 698 (1958). See also *Corning Glass Works v. Ann & Hope, Inc.*, 294 N.E.2d 354, 362 (Mass. 1973).

---

[5] 1 K. Davis, Administrative Law Treatise § 2.15 (1958).

The Supreme Court of Delaware struck down a statute that granted to the chairman of a political party the power to appoint the members of a state agency. It concluded: "[T]he Legislature can not [sic] delegate to the State Chairman of a political party, which is a voluntary organization of individuals, accountable to no one except its own organization, having no connection with the three branches of government in which the sovereign power of government is lodged by the Constitution, the power to appoint the members of a state agency . . . ." *State ex rel. James v. Schorr,* 45 Del. 18, 25, 65 A.2d 810, 813 (1948).

See also *Bayside Timber Co. v. Board of Supervisors,* 20 Cal. App. 3d 1, 97 Cal. Rptr. 431 (1st Div. 1971); *Zale-Las Vegas, Inc. v. Bulova Watch Co.,* 80 Nev. 483, 396 P.2d 683 (1964); *Fink v. Cole,* 302 N.Y. 216, 224-25, 97 N.E.2d 873, 876 (1951) (licensing power); *State v. Watkins,* 259 S.C. 185, 203, 191 S.E.2d 135, 143-44 (1972), vacated on other grounds, 413 U.S. 905, 93 S. Ct. 3053 (1973) (power to censor movies); *The House of Seagram, Inc. v. Assam Drug Co.,* 85 S.D. 27, 176 N.W.2d 491 (1970).

Here as in *Olin Mathieson,* the *Opinion of the Justices* and *James,* it must be concluded that the Constitution prohibits delegation to private groups of the power to make governmental appointments. Since the process by which appellees were designated violates this principle, it is unconstitutional.

The order of the Commonwealth Court is reversed and the preliminary objections of the appellants are sustained.

Mr. Justice MANDERINO joins in this opinion.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE MANDERINO:

I agree with Mr. Justice ROBERTS' majority opinion. The legislative branch cannot constitutionally

allow *private organizations* to appoint persons to government positions. A citizen who is not a member of the private organization has no control over that organization. Indeed, a particular citizen may not be eligible for membership or may not be able to pay the initiation fee or dues. Yet, the legislative action here would give such a private organization authority to choose people who will decide how to spend that citizen's tax money.

Private interest groups indirectly play an important role in our system of government. Any member of these groups may be appointed to any committee, *as a knowledgeable citizen* with particular expertise in a given area. It may be that specific private organizations or their leaders can be designated as members of *advisory* governmental committees which have completely nonbinding powers. Such is not the case before us however. Under the guise of creating a committee of the executive branch, the legislative branch in this case delegated, to a private organization, governmental authority to expend public funds and to appoint persons to governmental positions. This the legislature may not do.

Moreover, this legislative enactment usurps authority which belongs to the executive branch. "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed." Pa. Const. art. IV, §2. The legislature's membership choice might be completely inimicable to a Governor's intentions, convictions, philosophies or campaign promises. If, in this case, the legislature could establish the committee and designate its members, why could it not establish a committee to run any cabinet department, tell a Governor who is to serve on the committee, and thereby render the Executive totally ineffective as a separate branch of government. The potential for thus rendering the executive branch in-

effective in any given area is great, and involves an unconstitutional encroachment by the legislature upon the executive branch of government.

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

The challenged provision of Act No. 212 of 1972 permits three private organizations—the Pennsylvania State Council of Farm Organizations, the Pennsylvania Canners and Fruit Processors Association and the Pennsylvania Association of County Fairs—to designate, *i.e.*, appoint, eight of seventeen members of the committee charged with the task of approving and overseeing the expenditure of excess proceeds in the Pennsylvania Fair Fund for agricultural research projects. The majority contends that the statutory provision is unconstitutional as an improper delegation of legislative power. In evaluating this charge, we proceed, as the majority correctly points out, in compliance with the well-settled rule that an act of the General Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution. *Absentee Ballots Case (No. 2)*, 431 Pa. 178, 181-82, 245 A.2d 265, 267 (1968); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963); *Rubin v. Bailey*, 398 Pa. 271, 157 A.2d 882 (1960). I believe that the majority has misapplied this standard.

Article II, Section 1 of the Pennsylvania Constitution of 1968 provides that: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." The legislative power is indisputably the power to make laws. *See, e.g., Baldwin Township's Annexation*, 305 Pa. 490, 158 A. 272 (1931). In control of the State's finances, the General Assembly is supreme; appropriations may be made for whatever purposes and in whatever amounts the legislature deems desirable, subject to certain well-settled con-

stitutional limitations on its exercise of legislative power. *See Commonwealth ex rel. Schnader v. Liveright*, 308 Pa. 35, 161 A. 697 (1932). Two of these limitations, the prohibition of special laws and the rule against delegation of law-making power, are pertinent to the present case.

It is fundamental that the General Assembly cannot delegate its power to make laws to any other branch of government, or to any other body or authority. *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A.2d 487 (1965); *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957); *Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A.2d 277 (1947); *Holgate Brothers Co. v. Bashore,* 331 Pa. 255, 200 A. 672 (1938). In *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania,* 441 Pa. 293, 297, 272 A.2d 478, 481 (1971), we recently delineated the bounds of legislative power in light of the non-delegation principle: "While not specifically set forth in the Constitution, the non-delegation rule is a natural corollary to Article II, §1 since it requires that the basic policy choices involved in 'legislative power' actually be made by the Legislature as constitutionally mandated. It is generally agreed that the non-delegation principle does not require that all details of administration be precisely or separately enumerated in the statute. 'While the legislature cannot delegate power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act.' . . . However, legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions." *Chartiers Valley Joint Schools v. Allegheny County Board*

*of School Directors,* 418 Pa. at 529, 211 A.2d at 492-93. The question which initially must be answered is whether Section 16(e) of the Pennsylvania Harness Racing Act of 1972 contains standards adequate to guide and restrain the exercise of the delegated administrative function.

The legislative purpose underlying enactment of the contested provisions of the Act is clearly to benefit agriculture throughout the Commonwealth and the public interest therein through public funding of agricultural research projects. While the standard of action in the public interest is not explicitly set forth in the statute, the directive to fund only those projects most beneficial to the public interest is so implicit in the tenor of the statutory provisions of Section 16(e) that it would strain this Court's interpretative powers to construe otherwise. The legislative designation "agricultural research projects" is a sufficiently adequate standard to guide and restrain the exercise of this particular committee's delegated administrative function—implementation of the legislative policy determination that a fixed amount of excess proceeds from harness racing should support agricultural research—in approving and overseeing the expenditure of public funds. The General Assembly has not, in my estimation, delegated legislative power to the Committee. Indeed, in imposing upon the seventeen individuals the duty to carry out the declared legislative policy, the General Assembly has chosen administrators broadly representative of agricultural interests within the Commonwealth whose expertise could well be expected.[1]

---

[1] The interpretation that Section 16(e) of the Act involves not a delegation of legislative power but only creation of an administrative duty necessarily disposes of appellants' contention that the General Assembly has usurped the Governor's power of appointment. Article IV, Section 8 of the Pennsylvania Constitution pro-

Having determined that the power to implement the declared legislative policy could constitutionally be delegated to an administrative body, we turn to consider whether the appellees, the designees of the Pennsylvania Council of Farm Organizations, as participatory members of the Committee, may constitutionally be charged with the exercise of that power.

This Court has never declared that in making a law to delegate the power to determine the existence of a state of facts or circumstances upon which operation of the law will commence, the General Assembly may not constitutionally allow informed private citizens to participate in the fact-finding process. In its promulgation of the amended provisions of the Harness Racing Act, the General Assembly has declared as a matter of legislative policy that public funds are to be expended to benefit agriculture throughout the Commonwealth. We should not hold that it would be illogical or unreasonable to have represented on the committee charged with implementation of that policy the Pennsylvania Council of Farm Organizations, which itself represents over 63,000 Pennsylvania farmers and forty-three individual farm organizations, and, although not parties to this suit, the Pennsylvania Canners and Fruit Processors Association and the Pennsylvania Association of County Fairs. The compre-

---

vides in part: "(a) The Governor shall appoint an Attorney General, a Superintendent of Public Instruction and such other officers as he shall be authorized by law to appoint." Article VI, Section 1, declares in similarly constrictive language that : "All officers, whose selection is not provided for in this Constitution, shall be elected or provided for as directed by law." As the Commonwealth Court has correctly indicated in its review of this controversy, the Governor's power of appointment is in all respects narrowly defined by the Constitution and by the Legislature. *Hetherington v. McHale*, 10 Pa. Commonwealth Ct. 501, 514, 311 A.2d 162, 169 (1973).

hensive size, knowledge and agricultural awareness of the three named organizations bespeak their particular suitability to reflect the interests of the agricultural community as a whole and substantiates the legislative logic underlying the designation of their representatives as members of the committee. Where an administrative function has been properly delegated, a classification vesting in private persons or groups the power to participate in administrative actions need not be and is not here constitutionally defective as special legislation.[2]

The declared legislative policy of Act No. 212 is to promote agriculture throughout the Commonwealth. It is difficult to perceive how the public funding of agricultural research projects, whether or not chosen by a committee of whose seventeen members eight represent private agricultural groups, will not inure in the short and long run to the benefit of all Pennsylvanians. These organizations represent the views of a very high percentage of Pennsylvania farmers and agricultural processors upon whose progress the state of agriculture in this Commonwealth depends.

The majority's refrain calling for elected, responsive representation in government tends to unduly romanticize the issue. Certainly no framer of a democratic

---

[2] The majority's reliance on our decision in *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A.2d 266 (1964), is misfounded. In that case, we considered only the non-delegability to private persons of the *price regulatory power* of the General Assembly. *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 272 A.2d 478 (1971), is also inapposite to our considerations. Therein, we invalidated a statute which required chiropractors to attend a two-day conference of a private chiropractic society as a precondition for renewal of their annual registration and license. There was, we concluded, *no* sound reason or real necessity for such special classification.

society ever propagated the idea that all public servants must be elected. Only the highest of our policy-making officials are to be elected. The Pennsylvania Constitution pragmatically provided for the thousands of situations in which public officials must be appointed.

Indeed, in a society of ever-growing complexity and perplexity, our elected officials must have at their disposal a generous admixture of experts to advise them on governmental problems. The majority's decision today closes one avenue by which the specialists may advise our elected leaders.

A relevant consideration is that nine members of this seventeen-member committee are from the "politically responsive" category. The appellees do not constitute a "controlling number" of a Commonwealth committee, as the majority would have us believe. The minority status of appellees as members of the committee charged with implementation of declared legislative policy does not invalidate the otherwise constitutional statutory provision. I agree with the decision of the Commonwealth Court that the inherent presumption of constitutionality has not been overcome.

Mr. Justice O'BRIEN and Mr. Justice POMEROY join in this dissenting opinion.